# CASES

### DECIDED IN THE

# SUPREME COURT OF GEORGIA

#### AT THE

## MARCH TERM, 1904.

---

### HERRING *v.* THE STATE.

1. An affidavit made by one to obtain a criminal warrant may be the basis of an indictment for subornation of perjury, and such indictment is not demurrable because it appears from the indictment that the words "to the best of his knowledge and belief" were inserted in the affidavit, as in the form prescribed for procuring such a warrant, it further appearing that the indictment charged that the alleged suborner and perjurer both knew that the charge contained in the affidavit was false; nor was the indictment in this case demurrable because it contained no averment that the false affidavit was actually used in procuring a warrant, nor because the offense was not set forth with more particularity, nor for any other reason assigned.
2. Sodomy, as defined in the Penal Code, § 382, is a crime which may be committed otherwise than per anum.
3. The trial judge committed no material error in charging the jury, or in failing to charge, or in refusing to charge as requested; and the evidence warranted the verdict.

Argued January 20, — Decided March 7, 1904.

Indictment for subornation of perjury.   Before Judge Felton. Bibb superior court.   January 6, 1904.

*R. Douglas Feagin,* for plaintiff in error.   *William Brunson, solicitor-general,* and *Dessau, Harris & Harris,* contra.

TURNER, J.   Herring was by the grand jury of Bibb county charged with the offense of subornation of perjury.   The charging part of the indictment was as follows: "For that the said Phil Herring did, on the first day of August," 1903, "in the county aforesaid, wilfully, knowingly, and feloniously solicit, counsel, and procure one J. W. Jordan to commit the offense of perjury, in the manner and form and by the means as follows, to wit: in this, that the said Phil Herring did, in said State and

709

county, and at the time aforesaid, wilfully, knowingly, and feloniously solicit, counsel, and procure the said J. W. Jordan to appear, on the first day of August [1903], before W. A. McClellan, a justice of the peace of the 564th district, G. M., in and for said county, in a certain judicial proceeding, for the purpose of making and swearing to and subscribing to an affidavit that a warrant might be issued thereon by the said W. A. McClellan, justice of the peace aforesaid, in the name of the State of Georgia against Sam Dunlap for the offense of sodomy, and the said W. A. McClellan being then and there a judicial officer fully competent and authorized by law to administer a lawful oath, and the said W. A. McClellan, justice of the peace as aforesaid, having then and there jurisdiction of said judicial proceeding; and thereupon, a lawful oath being then and there administered to the said J. W. Jordan by the said W. A. McClellan, justice of the peace as aforesaid, in said judicial proceeding, the said Phil Herring did then and there solicit, counsel, and procure the said J. W. Jordan to swear, and the said J. W. Jordan, being so solicited, counseled, and procured by the said Phil Herring, did wilfully, knowingly, absolutely, and falsely swear, amongst other things, in substance and effect the following: that is to say, that the said Sam Dunlap, to the best of the knowledge and belief of the said J. W. Jordan, did on the 14th day of July, 1903, in the county of Bibb and State of Georgia, commit the offense of sodomy, all of which. said matter was then and there wilfully, knowingly, and feloniously sworn to, in substance and effect, by the said J. W. Jordan, being then and there material to the issue in the judicial proceeding aforesaid, the said J. W. Jordan being then and there in said judicial proceeding making, swearing, and subscribing to an affidavit before the said W. A. McClellan, justice of the peace as aforesaid, for the purpose of having a warrant issued against the said Sam Dunlap for the offense of sodomy; and the jurors aforesaid, on their oaths aforesaid, do say that the said Sam Dunlap did not, in truth and in fact, on the 14th day of July in the year 1903, in the county of Bibb and State of Georgia, commit the offense of sodomy; and the jurors aforesaid, on their oaths aforesaid, do say that the said J. W. Jordan then and there well knew that the said Sam Dunlap did not commit the offense of sodomy, as the said J. W. Jordan did then and there swear, as aforesaid, and the

said J. W. Jordan then and there well knew that he, the said J. W. Jordan, did not believe that the said Sam Dunlap had committed the offense of sodomy, as the said J. W. Jordan had sworn in said affidavit, as aforesaid; and the jurors aforesaid, upon their oaths aforesaid, do further say that the said Phil Herring, on said first day of August, 1903, well knew that said testimony which he, the said Phil Herring, had so procured, counseled, and solicited and induced the said J. W. Jordan to deliver, make, subscribe, and swear to in said affidavit and in said judicial proceeding was false, and the said Phil Herring well knew that the said J. W. Jordan well knew that said testimony was false, and that he, the said Phil Herring, and J. W. Jordan both well knew that the said Sam Dunlap did not, on the 14th day of July, 1903, commit the offense of sodomy, as the said J. W. Jordan had sworn in said affidavit and in said judicial proceeding; and the jurors aforesaid, on their oaths aforesaid, do further say that the said Phil Herring well knew that at the time the said J. W. Jordan subscribed to said affidavit in said judicial proceeding, which was so solicited, counseled, and procured as hereinbefore set forth, that the said J. W. Jordan knew that the same was false and that the said Phil Herring knew that the same was false; and the jurors aforesaid do further say that the said Phil Herring did wilfully, knowingly, and feloniously counsel, procure, solicit, and induce the said J. W. Jordan to deliver said false testimony and make, subscribe, and swear to said affidavit in said judicial proceeding at the time aforesaid, then and there intending and desiring that said false testimony should be used for the purpose of procuring a warrant to be issued as hereinbefore set forth against the said Sam Dunlap for the offense of sodomy, contrary to the laws of said State," etc.

The affidavit upon which the charge of perjury rested was as follows: "State of Georgia, Bibb County. Personally appeared J. W. Jordan who on oath saith that to the best of his knowledge and belief Sam Dunlap did commit the offense of sodomy in the County of Bibb on the 14th day of July, 1903; and this deponent makes this affidavit that a warrant may issue for his arrest. [Signed] J. W. Jordan    Sworn to and subscribed before me this 1st day of August, 1903.    [Signed] W. A. McClellan. J. P."

To this indictment the plaintiff in error filed an elaborate demurrer, containing many grounds, which demurrer was overruled,

and he excepted.    The case was then tried by a jury, and he was found guilty.    Thereupon he made a motion for a new trial on various grounds, which was refused, and to this refusal he excepted.    His counsel, in a supplemental brief, insists that grounds 1, 2, and 3 of the demurrer to the indictment are sufficient to dispose of the case, and these grounds will now be considered.    They are as follows:    " 1. Said indictment charges defendant with no crime under the laws of Georgia.    2. Said indictment is void on its face, because against public policy, and for the reason that an affidavit, sworn to not absolutely, but to the best of affiant's knowledge and belief, and made for the purpose of procuring a warrant for the arrest of an alleged criminal, can not be made the basis of an indictment for perjury.    3. Said indictment is contradictory upon its face and in a material point, in that it charges that J. W. Jordan 'did wilfully, knowingly, absolutely, and falsely swear, amongst other things, in substance and effect the following: that is to say, that the said Sam Dunlap, to the best of the knowledge and belief of the said J. W. Jordan, did, on the 14th day of July, 1903, in the County of Bibb and State of Ga., commit the offense of sodomy.'    Defendant contends that swearing to the best of one's knowledge and belief is not swearing absolutely, and that said indictment for this reason charges no crime."    The important question in this case is whether Jordan could be convicted of perjury under the form of affidavit above given.    The other grounds of the demurrer will be generally treated hereinafter, so far as they appear material and necessary to the decision of this case.

1. The nice and subtle technicalities with which some of the courts in the past surrounded the crime of perjury rendered a conviction for that offense well-nigh impossible.    It is probable that these niceties were devised by the common-law courts, on account of the barbarous punishment which was visited upon persons convicted of this offense.    The punishment has been humanely mitigated, and at the same time the class of persons competent to testify in court has been greatly enlarged.    As all faith in judicial proceedings rests upon the final sanction of an oath, it is good policy, not only for this reason but for those above indicated, to facilitate, in so far as may be consistent with law and justice, convictions for this crime.    In order to simplify the practice in perjury

cases, the British Parliament, in 1750 (which was before our adopting act), deemed it expedient to declare by 23 Geo. 2, c. 11, that: " Whereas, by reason of difficulties attending prosecutions for perjury and subornation of perjury, those heinous crimes have frequently gone unpunished, whereby wicked and evil-disposed persons are daily more and more emboldened to commit the same, to the great dishonor of God, and manifest let and hindrance of justice; for remedy whereof be it enacted, &c. § 1. In every information or indictment to be prosecuted against any person for wilful and corrupt perjury, it shall be sufficient to set forth the substance of the offense charged upon the defendant, and by what court, or before whom, the oath was taken (averring such court or person or persons to have competent authority to administer the same), together with the proper averment or averments to falsify the matter or matters wherein the perjury or perjuries is or are assigned ; without setting forth the bill, answer, information, in-dictment, declaration, or any part of any record or proceeding, either in law or in equity, other than as aforesaid; and without setting forth the commission or authority of the court or person or persons before whom the perjury was committed; any law, usage, or custom to the contrary notwithstanding. § 2. In every information or indictment for subornation of perjury, or for corrupt bargaining or contracting with others to commit wilful and corrupt perjury, it shall be sufficient to set forth the sub-stance of the offense charged upon the defendant; without setting forth the bill, answer, information, indictment, declaration, or any part of any record or proceeding, either in law or equity, and with-out setting forth the commission or authority of the court, or per-son or persons, before whom the perjury was committed, or was agreed or promised to be committed ; any law, usage, or custom to the contrary notwithstanding." See Bish. Cr. Proc. § 907. This statute may, therefore, be treated as a part of our law govern-ing the procedure in these cases. It was enlarged and re-enacted by 14 & 15 Vict. c. 100, §§ 20, 21, has been enacted into law by nearly all of those States which did not adopt it from the com-mon law, and has been practically enacted by Congress. A very simple definition of perjury is contained in the Revised Statutes of the United States, § 5392, which provides that "Every person who, having taken an oath before a competent tribunal, officer, or

person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, wilfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury."

Our statute governing the form of an indictment (Penal Code, § 929) declares that "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offense in the terms and language of this code, or so plainly that the nature of the offense charged may be easily understood by the jury." Under the English statute first above cited and this provision of our code, we think the first ground of the defendant's demurrer was properly overruled, as the indictment returned against him contained every material averment under our definition of perjury and of subornation of perjury. Penal Code, § 256. The second and third grounds of the demurrer assail the indictment upon substantially the same point, to wit: that the defendant was not charged with having sworn absolutely, but only to the best of his knowledge and belief. It is broadly insisted that an affidavit which contains the words, "to the best of affiant's knowledge and belief," can not be made the foundation of a charge of perjury. In every case of perjury it is essential to a conviction that it should be averred and proved that the false oath was wilfully and knowingly taken. That element has entered into every case from the earliest days of the common law. An honest oath, though untrue, is not perjury. *Thomas* v. *State*, 71 *Ga.* 252; 2 Whart. Cr. Law (10th ed.) §§ 1248–9. On the other hand, swearing to what he believes to be false, or what he knows nothing about, though it turns out to be true, is perjury, in some jurisdictions. 1 Bish. New Cr. Law, § 437, par. 3. It should also be borne in mind that the affidavit on which the indictment in the present case was predicated is in the form prescribed by our Penal Code, § 884. The words, "to the best of his knowledge and belief," therefore are a part of the affidavit which the law directs shall be made before a warrant issues. This court, in *Pennaman* v. *State*, 58 *Ga.* 336, dealt with a case of perjury assigned upon an affidavit containing these words. This statement can easily be verified by an examination of the original bill of excep-

tions in that case.   Indeed, these words were twice repeated in the affidavit under consideration in that case. . Pennaman filed no demurrer, and was convicted on his plea of not guilty.   A motion for a new trial was made and overruled, in one ground of which complaint was made that the verdict was contrary to the law and the evidence.   He also made a motion in arrest of judgment, based on various grounds, which was also overruled ; and he excepted to the overruling of this motion, as well as to the refusal of the court to grant him a new trial.   It is true that the precise point now presented was not specifically made in the *Pennaman* case; but it is difficult to believe that the careful judge who delivered the opinion of the court in that case failed to see that the conviction of Pennaman was contrary to the law and the evidence, if the words, " to the best of affiant's knowledge and belief," were fatal to a lawful conviction of perjury.   Judge Bleckley said, in that case:   " Perjury may be assigned upon an affidavit charging an offense and made for the purpose of procuring a warrant therefor. Such an affidavit, made for such a purpose, is the beginning of a judicial proceeding.   It belongs to proceedings before arrest, and is treated of under that head in the Code. . . It sets forth probable cause for a warrant, and upon it alone a warrant might issue. Enough is established to result legally in depriving the accused person, for a time, of his liberty.   Treating probable cause as the issue or point in question, there can be no doubt that the matter of the affidavit is vitally material."   From this terse statement of the elements of an affidavit to obtain a warrant, it is sufficiently obvious that the question raised by such an affidavit is one simply of probability of the defendant's guilt, and the defendant in such a proceeding need only show that he is not probably guilty.   It would seem, therefore, that it is peculiarly true in the present case that the perjury charged consists in swearing falsely and corruptly, without probable cause or belief.   " Or, to give a definition drawn from the older common-law authorities " by Wharton, perjury " is the wilful assertion as to a matter of fact, opinion, belief, or knowledge, made by a witness in a judicial proceeding as part of his evidence, either upon oath or in any form allowed by law to be substituted for an oath, whether such evidence is given in open court, or in an affidavit, or otherwise, such assertion being known to such witness to be false, and being intended by him to

mislead the court, jury, or person holding the proceeding. . . The offense consists in swearing falsely and corruptly, without probable cause of belief; not in swearing rashly or inconsiderately, according to belief." 2 Whart. Cr. Law (10th ed.) §§ 1244, 1245. In support of the above text the author cites: 1 Hawk. c. 69, s. 1; 3 Inst. 164; Bac. Ab. title " Perjury;" Burn's Justice (same title); Steph. Dig. Crim. Law, art. 135; Pickering's case, 8 Gratt. 625, and a large number of decisions by the courts of this country.

The contention of the able counsel for the plaintiff in error seems justified by what is laid down in Hawkins' Pleas of the Crown (vol. 1. p. 433, sec. 7), where these words are used: " It is said, that no oath shall amount to perjury unless it be sworn absolutely and directly ; and therefore, that he who swears a thing according as he thinks, remembers, or believes, can not in respect of such an oath be found guilty of perjury." This work was a well-known text book at the time our first Penal Code was adopted ; and it is likely that the above-quoted statement of the law was in the minds of the judges who expressed similar opinions when dealing with certain civil cases. But in Curwood's edition of that work, in a footnote to the paragraph mentioned, cases are cited which show that the author mistook the law. In one of these (Miller's case, 3 Wils. 427, 2 Bl. Rep. 881), Lord Chief Justice DeGrey said it was a mistake mankind had fallen into, that a person can not be convicted of perjury, who swears that he thinks or believes a fact to be true, for that he certainly may, and it only renders the proof of it more difficult. And in the case of the King *v.* Pedley (B. R. Trin. term, 1784), this opinion was confirmed by Lord Mansfield. Cases in Crown Law, 269. This question was also agitated in the Common Pleas (Mich. term, 1780) by Mr. Serjeant Walker, when Lord Loughborough and all the other judges were unanimous that belief was to be considered as an *absolute* term, and that an indictment might be supported upon it. And Russell, in his work on Crimes (6th ed. vol. 1, p. 294), reviews the foregoing authorities with apparent approval. The author also refers to the case of R. *v.* Schlesinger 10 Q. B. 670, saying: " An indictment for perjury alleged that the defendant swore that he *thought* that certain words written in red ink were not his writing; whereas the defendant, when he so deposed, *thought* that the said words were his writing; and the

Court of Queen's Bench held that the assignment was sufficient. If a witness swore that he thought a certain fact took place, it might be difficult indeed to show that he committed wilful perjury. But it was certainly possible, and the averment was as properly a subject of perjury as any other." In the case of Patrick v. Smoke, 3 Strob. 147, which was an action of slander, Frost J., speaking for the Court of Appeals of South Carolina, said (page 152) : " The plaintiff testified postively that the account was just and true — and, to the best of his knowledge and belief, no part thereof was paid. But even if it be admitted the plaintiff only swore that the account was just, to the best of his belief, perjury may be assigned of such an oath," — citing 2 Russ. Cr. 592. A man can not swear falsely, and shield himself from the penalty of perjury by stating in his affidavit that he believes his statement to be true. Hughes' Cr. Law, § 1588, citing Johnson v. People, 94 Ill. 513–514; Reg v. Pedley, 1 Leach 365 ; Com. v. Cornish, 6 Binn. (Pa.) 249. Oftentimes affiant's knowledge of matters stated in his affidavit must, of necessity, rest upon information derived from others ; and where this is the case, it is generally sufficient if he aver that such matters are true to the best of his knowledge and belief. Belief is to be considered an absolute term, in this connection ; hence to swear that one believes a thing to be true is equivalent to swearing that it is true, and perjury may be assigned on such affidavit. 2 Cyc. 25 (4b), and cit. It follows from these authorities that where a man swears wilfully, knowingly, absolutely, and falsely to a matter material to the issue or point in question in some judicial proceeding, according to his knowledge and belief, or to the best of his knowledge and belief, he is guilty of perjury.

By reference to the indictment in this case it will be seen that it is distinctly charged that " Jordan then and there well knew that the said Sam Dunlap did not commit the offense of sodomy, . . and the said J. W. Jordan then and there well knew that he, the said J. W. Jordan, did not believe that the said Sam Dunlap had committed the offense of sodomy." This denial of the affiant's knowledge and belief made an issue which, though difficult to prove in some cases, is easily determined in a case of this character. As to the proper manner of negativing knowledge and belief in such an indictment, see Whart. Cr. L. (10th ed.) § 1302. In

certain civil cases decided by this court it has been held that affidavits to the best of deponent's knowledge and belief were not permissible. See *Bryan* v. *Ponder*, 23 *Ga.* 480 ; *Stancel* v. *Puryear*, 58 *Ga.* 445 ; *Neal* v. *Gordon*, 60 *Ga.* 112 ; *Martin* v. *Lamb*, 77 *Ga.* 252, 256 ; *Sprinz* v. *Vannucki*, 80 *Ga.* 774 ; *Plant* v. *Insurance Co.*, 92 *Ga.* 636. But on examination of these cases it will be found that the affidavits required were such as are prescribed by law as conditions precedent in pleading. They related to garnishment cases, cases of ne exeat, illegality, non est factum, and attachment. The effect of these decisions is simply to require positive and unequivocal oaths in the kind of cases mentioned, and they have no application to the case now under consideration. It is true that in some of the cases cited the judges who delivered the opinions therein used terms, in the way of argument or illustration, which apparently support the contention of the plaintiff in error ; but what was said in this respect was unnecessary to the decisions announced in those cases, and can not, we think, properly be regarded as controlling, or even pertinent. Sometimes a statute providing for the making of an affidavit requires the facts to be positively stated ; and where this is the case, an affidavit based merely on information and belief can not be received. 2 Cyc. 24 (4a) and cit. A valid rule of practice would have the same effect.

The defendant's demurrer also set forth the complaint that there was no averment in the indictment that the affidavit therein referred to was ever filed with any officer having jurisdiction to issue a warrant. The authorities seem to regard such filing as unnecessary. Lord Tenterden, in the case of *Rex* v. *White*, M. & M. 271, said, in discussing the legal effect of an affidavit falsely made with the intention that it should be the basis of a motion for an injunction : " Can it make any difference that it afterwards turns out that the motion is not made ? The crime, if any, is the same, morally, in each case ; and I certainly shall not, where the objection is open hereafter, hold it necessary to give proof of a fact which does not vary the conduct of the party in taking the oath in question." " And it has been since held that an affidavit sworn for the purpose of being used in a cause, but which is neither used nor filed, is nevertheless the subject of perjury." 1 Russ. Crim. (6th ed.) 394, citing *Hammond* v. *Chitty*,

Q. B., E. T. 1846, MSS. C. S. G., and also the following American authorities: State v. Whittemore, 50 N. H. 245; Miller v. Munson, 34 Wis. 579, 17 Am. R. 461; Mairet v. Marriner, 34 Wis. 582. An "averment that the affidavit was filed in court is natural enough and common; still, as the defendant's guilt does not depend on what is done after the false swearing has transpired, it is wholly useless." Bish. Direc. & Forms (2d ed.), note 5, p. 497, citing Rex v. Crossley, 7 T. R. 315.

What has been said above as to perjury applies with equal force to the offense of subornation of perjury. In view of the statute of 23 Geo. 2, and of the provisions of our code hereinbefore quoted, we think the indictment in this base was not subject to demurrer, either upon the grounds specifically dealt with above, or upon any of the other grounds relied on by the plaintiff in error in support of his contention that the indictment was not sufficiently explicit to enable him to fully understand and prepare to meet the charge intended thereby to be preferred against him.

2. According to the evidence adduced on the trial, a scheme was formed to extort money from Dunlap by means of an infamous charge brought against him; Herring, Jordan, L. H. Callaway, and one McCowan, a deputy sheriff, being privies to the plot. Herring furnished the charge, Jordan was to do the swearing, Callaway was expected to be a witness, and McCowan undertook to finance the enterprise. McCowan, however, betrayed the conspiracy to Dunlap, and, for a consideration paid by Dunlap, undertook to help Dunlap in bringing the other parties to justice. The affidavit hereinbefore recited was taken by Jordan, and upon it a warrant was issued against Dunlap for the offense named. Dunlap was arrested, it seems, and gave bond. Just before the time appointed for the hearing on the warrant, McCowan seems to have paid Herring, Jordan, and Callaway five dollars each; though it is rather intimated than proved that Herring received from McCowan a much larger amount, inasmuch as he appears to have been able to visit Atlanta and Indian Springs, and had money on his return to Macon. It was shown that no one appeared at the time appointed for the hearing of the charge brought against Dunlap, and that the case was dismissed by the magistrate for want of prosecution. Herring was indicted, as we have seen, for subornation of perjury. McClellan, the magistrate before whom

Jordan subscribed to the affidavit, Callaway, Dunlap, and Jordan were sworn as witnesses for the State on the trial of the case. Jordan, on his cross-examination by counsel for the defendant, testified that Herring, when endeavoring to induce him to make the false affidavit, described the alleged infamous act as having been committed by Dunlap, not per anum, but in even a more disgusting way; and Herring, in his statement to the jury, gave a similar account of the way in which the act was committed, insisting that the crime was actually perpetrated.    All the other witnesses who were cognizant of the conspiracy testified, in substance, that the charge brought against Dunlap was known to be false and was devised as a part of the blackmailing scheme.    In the motion for a new trial, the greatest effort on the part of counsel for the plaintiff in error was devoted to presenting his contention that the offense of sodomy can not be committed otherwise than per anum.    We have no access to the English statutes on this subject; but that this was the construction of the common-law writers seems to be settled by the weight of authority.    See 3 Russ. Crim. (6th ed.) 250; 1 Whart. Cr. Law (10th ed.) § 579; Bac. Abr. title "Sodomy;" Clark's Cr. Law (2d ed.) 367, and cit. But the judicial determinations which actually so limit the way in which this crime may be committed are few and unsatisfactory; and the text-writers just mentioned, in declaring that the offense must be committed in that part in which it is "usually" committed, seem to imply that it might be practiced in some other way.

In 1 Hawk. Pleas of the Crown (which was, as hereinbefore stated, a leading text-book at the time our first Penal Code was adopted), it is said, on page 357, that "All unnatural carnal copulations, whether with man or beast, seem to come under the notion of sodomy, which was a felony by the ancient common law." Our Penal Code, § 382, defines this crime as follows: "Sodomy is the carnal knowledge and connection against the order of nature, by man with man, or in the same unnatural manner with woman." It will be noted that this definition contains no limitation as to the organ with which such unnatural connection may be made. It will also be observed that bestiality (which was, according to the common-law authorities, a form of sodomy or buggery) is omitted from the foregoing definition of sodomy, and is made a separate and distinct offense.    Penal Code, § 384.    The latter section

reads as follows: "Bestiality is the carnal knowledge and connection against the order of nature, by man or woman in any manner with a beast." It is also to be noted that there is no limitation as to the means by which this crime may be committed. After much reflection, we are satisfied that if the baser form of the abominable and disgusting crime against nature, i. e. by the mouth, had prevailed in the days of the early common law, the courts of England could well have held that that form of the offense was included in the current definition of the crime of sodomy. And no satisfactory reason occurs to us why the lesser form of this crime against nature should be covered by our statute, and the greater excluded, when both are committed in a like unnatural manner, and when either might well be spoken of and understood as being "the abominable crime not fit to be named among Christians." We therefore think that it made no difference in this case whether Herring and Jordan had in mind the one or the other form of the crime, when Herring was persuading and procuring Jordan to make the false affidavit.

3. We have carefully read and studied the charge to the jury given by the trial judge, and have concluded that he committed no harmful error either in charging, or in failing and refusing to charge. While some of the requests to charge might have been given in the language requested, they were substantially covered by the charge as given. The evidence warranted the verdict.

*Judgment affirmed.*      *All the Justices concur, except Simmons, C. J., absent.*