## STATE v. WHITMARSH.

Assignments of error not discussed in appellant's brief will be considered waived.

Where an indictment charged that defendant did "willfully, etc., make an assault on one ——, a boy six years of age with the intent then and there to commit on the person of the said ——, the detestable and abominable crime against nature, in violation," it was sufficient without alleging the details of the offense.

Where accused complained that the state was allowed to ask him certain questions on cross-examination, but the abstract failed to show what witness was asked the questions, and there was nothing to show what was elicited from the witness on the direct examination, the record did not show error.

Error was not shown in the court's refusal to permit a witness to answer whether accused in a prosecution for sodomy had been a good boy while he worked for the witness; it not appearing who the witness then being examined was, or that he was qualified to state.

A sentence is not objectionable because without giving credit for good time it would terminate between November and March, in violation of Pen. Code, § 799, since, if accused conducted himself properly, the sentence would not expire in the winter time.

Pen. Code, § 351, relating to sodomy, provides that every person who is guilty of the detestable and abominable crime against nature, committed with mankind or with a beast, is punishable by imprisonment, etc. Held, that the words "crime against nature," as used in such section, were not limited to the common-law crime of sodomy, which included only an act committed per anum, but covered unnatural carnal copulation by means of the mouth.

(Opinion filed November 18, 1910.)

Appeal from Circuit Court, Beadle County. Hon. LYMAN T. BOUCHER, Judge.

Louis Whitmarsh was convicted of an assault on a boy with intent to commit the crime against nature, and he appeals. Affirmed.

C. A. Kelley and James Byrnes, for appellant. S. W. Clark, Atty. Gen., and O. S. Hagen, State's Atty., for the State.

WHITING, P. J. Appellant was tried upon an information charging that he did "willfully, unlawfully, and feloniously make an assault upon one  *  *  * , a boy of six years of age, with the intent then and there to commit in and upon the person of the said  *  *  *  the detestable and abominable crime against

nature, in violation of section 351 of the Penal Code of the state of South Dakota and contrary to the statute. * * *" The jury returned a verdict of guilty, the court rendered judgment, and appellant was sentenced on February 1, 1909, to imprisonment in the state's prison for a period · of three years commencing that date. Appellant appealed from the judgment and from the order of the trial court denying a new trial.

Numerous assignments of error are set forth in the abstract upon appeal, but, under the established rule of this court, we will consider all abandoned except such as are discussed in appellant's brief.

Appellant assigns as error the overruling of a demurrer to the information. Appellant in his brief claims that the state's attorney stated to the lower court that by such information he intended to charge defendant with having committed the crime of sodomy, and appellant contends that such information only purports to charge "an assault with intent to commit crime against nature." There is nothing in the abstract to show that the state's attorney made any such statement, and the charge of the court to the jury shows that the appellant was tried on the charge of "an assault with intent," etc. Appellant further contends that such information is not specific enough—that it does not call attention to the particulars of the offense, the acts done in consummation thereof. The information is not subject to this objection. It has been universally held that, in informations or indictments charging crimes of the nature of the one with the intention of committing which appellant was charged, it is unnecessary to go into the loathsome and disgusting details thereof. Even in the time of Blackstone this rule was applied to the common-law crime of sodomy as is evidenced by the following quotation from 4 Blackstone, Commentaries, 215: "I will not act so disagreeable a part to my readers as well as myself as to dwell any longer upon a subject the very mention of which is a disgrace to human nature. It will be more eligible to imitate the delicacy of our English law, which treats it, in its very indictments, as a crime not to be named." Bradford v. State, 104 Ala. 68, 16 South. 107, 53 Am.

St. Rep. 24; Commonwealth v. Dill, 160 Mass. 536, 36 N. E. 472; 20 Ency. P. & P. 275; State v. Williams, 34 La. Ann. 87.

Appellant complains because, as he claims, the state was allowed to ask him upon cross-examination a certain question. An examination of the abstract fails to show what witness was asked the question referred to. The objection interposed was that the evidence was "incompetent, immaterial, and not proper cross-examination." · There is nothing to show what was elicited from the witness upon direct examination. The record is insufficient to present the error to the court, even if there were error.

Appellant contends that the trial court erred in not allowing "defendant's witness in whose employ the defendant had been for more than a year immediately prior to the commencement of this case to answer the following question: 'Q. Has Louis been a good boy while he worked for you?'" Even if it were to be conceded that a question so general in nature was proper upon defense of the crime charged here, yet we are again confronted with the condition of the abstract. This question follows directly the answer to the question above discussed, and it would appear that both questions were asked of one witness. There is absolutely nothing to show who was asked this question; nothing to show when, where, or for how long witness had known the appellant; nothing to show that appellant had ever worked for the witness, whoever such witness may have been.

Appellant complains of the period of sentence, alleging that it would terminate between November and March, and that this is forbidden by section 799, Rev. Pen. Code. Appellant has overlooked the provisions of our Code allowing time for good behavior. If the court had fixed a term which after allowing time that might be earned by good behavior would expire during the winter period, the appellant might have some cause for complaint, but it lies solely with appellant to say whether or not by wrongful conduct his sentence shall extend so as to expire during the winter.

Appellant complains in his brief of several portions of the charge to the jury. An examination of the record, however,

1910.]    STATE v. WHITMARSH.    429

shows that but one part of such charge was excepted to, being that portion of the judge's charge "wherein he states that the act described by the prosecuting witness, if true, would constitute the crime charged in the information." Inasmuch as the act described by such witness was one made clear by the evidence of the witness, so clear that there could be no possibility of a misunderstanding by the jury, as to the act that was referred to by the court, the only question for this court to determine is whether the act described by the prosecuting witness was an act constituting the consummation of the crime against nature. If such an act, it proved both the assault and the intent charged. If not such an act, while it was an assault most detestable in nature, yet it would be absolutely no proof of an intent to commit the crime against nature, and there was no other proof of such intent. A determination of this question also determines the correctness of the trial court's ruling upon a motion made by appellant for a directed verdict.

We regret that the importance of this question, covering as it does a matter wherein the courts of other states are in conflict, renders it necessary to soil the pages of our reports with a discussion of a subject so loathsome and disgusting as the one confronting us. The question presented is whether or not the crime against nature when committed by one male person upon another male person can be committed through the mouth, or whether it can only be committed through the anus. It must be conceded that under the common law sodomy could not be committed by means of the mouth; the reason given by all the authorities being that given in Russell on Crimes *937: "To constitute this offense, the act must be in that part where sodomy is usually committed." The mere statement of the above reason shows the unsoundness of such a distinction. It concedes that the act is sometimes committed in some other part, and, by conceding that the act committed in such other part is not the usual offense, the statement concedes that the act, if committed in such other part, would be still more unnatural, because, if not more unnatural, it would not be more unusual. Certainly this unusual act is many times more

"detestable and abominable" than that made criminal at common law. As was well said by the court in State v. Vicknair, 52 La. Ann. 1921, 28 South. 273: "But why in the common-law courts the use of the mouth should not have been considered as much against nature as though the act were committed per anum is incomprehensible." If it should be conceded that our statute, which refers to the crime, not by the use of word "sodomy," but by the use of the phrase "detestable and abominable crime against nature," does not, by such words, include more than is included in the one word "sodomy," yet should we feel bound by a construction based upon no sounder reasoning? What would we think of the reasoning of a court that should hold that the killing of a human being in some peculiar and practically unheard of manner was not murder simply because such killing was committed in an unusual way? It would certainly be as sensible as to say that sodomy is not sodomy when committed in an unusual way of committing sodomy. What is sodomy according to modern lexicographers? Webster defines it as "carnal copulation in a manner against nature." Such definition is certainly broad enough to include the act proven in this case. Texas, California, and Nebraska have held that their statutes include simply those acts that were sodomy under the common law. The Texas court enters into no discussion of the question, but merely bases its decision upon Russell on Crimes and the case of Rex v. Jacobs, Russ. & R. C. C. 331, saying that, the offense "being undefined, we must look to the common law for the elements of this crime." Prindle v. State, 31 Tex. Cr. R. 551, 21 S. W. 360, 37 Am. St. Rep. 833. It is quite possible that the Texas court was influenced in its decision by the use of the word "sodomy" in the statute of that state which reads: "If any person shall commit with mankind or beast the abominable and detestable crime against nature, he shall be deemed guilty of sodomy. * * *" In California, however, the offense is stated in the language of our statute (section 351, Rev. Pen. Code S. D.), and is similar to the Texas statute omitting from such statute, "he shall be deemed guilty of sodomy." In the case of People v. Boyle, 116 Cal. 658, 48 Pac.

800, the California court followed the above Texas decision without any discussion whatsoever, simply saying: "It has been so held in at least two cases"—and citing the Texas case and 1 Wharton, Cr. Law, § 575. The Nebraska court in Kinnan v. State, 86 Neb. 234, 125 N. W. 594, discusses the question before us quite fully, and inasmuch as their statute is similar to ours, and, like ours, does not use the word "sodomy," we should ordinarily give their decision great weight. It will be seen, however, that, after citing the old common law and the California and Texas decisions in support of their position, they attempt to strengthen their position by reference to decisions in Indiana, Iowa, Ohio, and Kentucky, stating: "In Commonwealth v. Poindexter [133 Ky. 720] 118 S. W. 943, the Supreme Court of Kentucky considered this question, and in a very able opinion reached the same conclusion. This view of the question was adopted by the Supreme Court of Ohio in Davis v. Brown, 27 Ohio St. 326, and thereafter the Legislature of that state enacted a statute to cover such a case. In Estes v. Carter, 10 Iowa, 400, a like construction of a similar statute was adopted, and thereupon the Legislature passed an act to supply the defect in the criminal law. Code Supp. Iowa 1907, § 4937a. The Supreme Court of Indiana in Ausman v. Veal, 10 Ind. 355, 71 Am. Dec. 331, adopted this rule, and such has always been the understanding of the text-writers." The only one of these cases bearing in the remotest degree upon the question before the Nebraska court is Commonwealth v. Poindexter, 133 Ky. 720, 118 S. W. 943, and the statute of Kentucky is not similar to that of this state or of Nebraska. The Kentucky statute (section 91, c. 182, Laws 1893) reads: "Whoever shall be convicted of the crime of sodomy or buggery with man or beast, shall be,  *  *  *" The Indiana case (Ausman v. Veal, 10 Ind. 355, 71 Am. Dec. 331) was one where the defense attempted to raise the question whether it were possible for the crime of beastiality to be committed with a certain domestic animal. The Iowa case (Estes v. Carter, 10 Iowa, 400) involved simply whether the courts of that state could take cognizance of and punish the common-law offense of sodomy, it not

having been made a crime by statute. There was not a syllable as to what acts might or might not constitute sodomy. The Ohio case (Davis v. Brown, 27 Ohio St. 326) raised identically the same question as the Iowa case. We therefore fail to find in the Nebraska decision any real support for their position, and must regard such case as entitled to little weight.

In Illinois they have a statute setting forth this offense by the use of the words, "the infamous crime against nature, either with man or beast," and not using the word "sodomy." In Honselman v. People, 168 Ill. 175, 48 N. E. 305, the court says: "But it is also contended that the evidence for the people, if true, did not prove the offense, because the defendant made use of his mouth. The evidence was that he was the principal actor in the transaction, and by his efforts the act was consummated by that means. The claim is that the evidence must prove the crime of sodomy, and that the crime against nature, as defined in our statute, embraces nothing but sodomy, or buggery, as denominated in the English statute. With this we cannot agree. While the 'crime against nature' and 'sodomy' have often been used as synonymous terms, paragraph 279 of our Criminal Code, defining infamous crimes, plainly shows that the Legislature included in the crime against nature other forms of the offense than sodomy or buggery. It is there enacted: 'Every person convicted of the crime of * * * sodomy or other crime against nature * * * shall be deemed infamous,' etc. The method employed in this case is as much against nature, in the sense of being unnatural and against the order of nature, as sodomy or any beastial or unnatural copulation that can be conceived. It is within the statute." The Nebraska court in referring to the Illinois decision maintains that it cannot be considered as authority in other states owing to "paragraph 279" referred to by the Illinois court. There can be no question, however, but that the Illinois court held that the term "crime against nature" is not necessarily synonymous with the word "sodomy."

We believe the clause "crime against nature" as used in our statute was so used intending to include therein every unnatural

carnal copulation. The statute of this state (section 10, Rev. Penal Code) provides: "The rule of common law that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and promote justice." It would be an insult to the Legislature which enacted our statute to hold that from the words of our statute it appears it intended to allow the most heinous form of the crime against nature to go unpunished simply because it was an unusual form of such crime. Even if our Legislature had in such statute used the term "sodomy," still we would feel bound to give to such word the broad meaning given it by lexicographers, which meaning was given it by at least one common-law authority, as is evidenced by 1 Hawk. Pleas of the Crown, p. 357, wherein it was said: "All unnatural carnal copulations, whether with man or beast, seem to come under the notion of sodomy; which was a felony by the ancient common law." And we would say with the Georgia court: "After much reflection, we are satisfied that, if the baser form of the abominable and disgusting crime against nature—i. e., by the mouth—had prevailed in the days of the early common law, the courts of England could well have held that that form of the offense was included in the current definition of the crime of sodomy. And no satisfactory reason occurs to us why the lesser form of this crime against nature should be covered by our statute, and the greater excluded, when both are committed in a like unnatural manner, and when either might well be spoken of and understood as being 'the abominable crime not fit to be named among Christians.'" Herring v. State, 119 Ga. 709, 46 S. E. 876.

The judgment of the trial court and order denying a new trial are affirmed.