## *Ex parte* EDWIN DE FORD.

No. A-3088.   Opinion Filed October 25, 1917.

(168 Pac. 58.)

**SODOMY—Form of Offense—Statute—"Crime Against Nature."** Section 2444, Rev. Laws 1910, providing. "Any person who is guilty of the detestable and abominable crime against nature, committed with mankind or with a beast, is punishable," etc.— includes copulation between human beings **per os** as well as **per anum.**

Original application by Edwin De Ford for writ of *habeas corpus.*   Writ denied.

*W. L. Boner,* for petitioner.

*R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J.   This is an application on the part of the petitioner, Edwin De Ford, for a writ of *habeas corpus* to be discharged from imprisonment in the state penitentiary at McAlester.

Petitioner alleges that he is unlawfully restrained of his liberty, in that the acts charged against him and of which he was convicted do not constitute "the abominable and detestible crime against nature" within the meaning of our statute.   The information to which the petitioner entered a plea of guilty alleged that he (petitioner) did "willfully, intentionally and feloniously commit the abominable and detestible crime against nature, by then and there taking into his mouth the penis of one F. H., and sucking the same until a seminal emission ensued."   The statute (sections 2444 and 2445, Rev. Laws 1910) provides:

"Sec. 2444.   Any person who is guilty of the detestible and abominable crime against nature, committed with

mankind or with a beast, is punishable by imprisonment in the penitentiary not exceeding ten years.

"Sec. 2445. Any sexual penetration, however slight, is sufficient to complete the crime against nature."

It follows if the act described in the information does not constitute a crime under the foregoing statute the petitioner should be discharged from custody, there being no other statute of this state on the subject. The question here involved is not one of first impression with the appellate courts of several of the states, although this is the first occasion this court has been called upon to consider the legal propositions raised by the petition. The authorities in those states where the common-law definition of sodomy has not been enlarged upon are directly in conflict. Some are to the effect that the act here charged was not intended to be, nor was it, included within the term "sodomy" as known to the common law, while the others, and to our mind better reasoned opinions, are to the effect that "all unnatural carnal copulation whether with man or beast seems to come under the notion of sodomy at common law." The precedents relied upon by counsel for petitioner apparently are based upon and may be traced to the case of *Rex v. Jacobs,* Russell and Ryan's Crown Cases, p. 331.

The text-writers and courts who have followed the above case have apparently done so without thoughtful consideration or careful investigation. Their action in so doing is thus criticized by the Supreme Court of Oregon in the case of *State v. Start,* 165 Or. 178, 132 Pac. 512, 46 L. R. A. (N. S.) 266:

"Many precedents are cited by the defendant in support of his theory. They are all traced back to and have their origin in the case of *Rex v. Jacobs,* Russell and

Ryan's Crown Cases, p. 331: The prisoner there was convicted on evidence showing conclusively that he had accomplished the act by force in the mouth of a boy about seven years old, and the question was whether this was sodomy. All that is said in answer to the question in the report of the case follows: 'In Eastern term, 1817, the judges met and were of opinion that this did not constitute the offense of sodomy, and directed a pardon to be applied for.' The authorities cited by the defendant have implicitly followed this *ipse dixit* of the English court without giving any reason therefor, always controlled solely by the doctrine of *stare decisis,* and often with protests against the authority of the rule. Although there are no common-law crimes in this state, we must turn to that law for the definition of certain crimes where the meaning thereof is not set forth in our Code. The rule at common law was that: 'All unnatural carnal copulation whether with man or beast seems to come under the notion of sodomy.' 1 Hawkins, Pleas of the Crown, p. 357. In the order of nature the nourishment of the human body is accomplished by the operation of the alimentary canal, beginning with the mouth and ending with the rectum. In this process food enters the first opening, the mouth, and residuum and waste are discharged through the nether opening of the rectum. The natural functions of the organs for the reproduction of the species are entirely different from those of the nutritive system. It is self-evident that the use of either opening of the alimentary canal for the purpose of sexual copulation is against the natural design of the human body. In other words, it is an offense against nature. There can be no difference in reason whether such an unnatural coition takes place in the mouth or in the fundament—at one end of the alimentary canal or the other. The moral filthiness and iniquity against which the statute is aimed is the same in both cases. Each is rightfully included in the true scope and meaning of the common-law definition quoted above from Hawkins. By far the better reasoninig is found in the cases of

*State v. Whitmarsh,* 26 S. D. 426, 128 N. W. 580; *Herring v. State,* 119 Ga. 709, 46 S. E. 876, and others which might be cited."

And again in the admirable opinion and unanswerable reasoning of Mr. Justice Cox of the Supreme Court of Indiana in *Glover v. State,* 179 Ind. 459, 101 N. E. 630, 45 L. R. A. (N. S.) 473:

"There can be no doubt of the soundness of the general rule that penal statutes are to reach no further in meaning than the fair and plain import of their words, and that acts within the mischief and reason, but not within the letter, are to be excluded. But the crime of sodomy has always been deemed a very pariah of crimes, and the acts constituting it but seldom specifically defined. There can be no doubt that many of the definitions are amply broad to include the act in question. The earliest mention of it in the laws of England may be found in Rotuli Parl. 50, Edward III, No. 58 (1376), where it appears that a complaint was made that the Lombards had brought into the realm a shameful vice, not to be named, which complaint was accompanied by the suggestion that it should be punished for the safety of the realm. The vice was not more particularly described. The statute of 25 Henry VIII made the 'detestible and abominable vice of buggery committed with mankind or beast' a felony punishable by death, but the felony was not otherwise described. Statutes at Large, 1483-1539, p. 267.

"Coke defines the crime as 'a detestible and abominable sin, amongst Christians not to be named, committed by carnal knowledge against the ordinance of the Creator, and order of nature, by mankind with mankind, or with brute beast, or by womankind with brute beast.' 3 Inst. 58. The same definition is found in Burns' Justice of the Peace, vol. 1, p. 528. Hawkins tells us that 'all unnatural carnal copulations, whether with man or beast, seem to come under the notion of sodomy, which was felony by the ancient common law, and punished, according

to some authors, with burning, according to others with burying alive.' 1 Hawk. P. C. 357. In Bacon's Abridgment the definition is 'an unnatural copulation between two human creatures or between a human and a brute creature.' 9 Bacon's Abr. 158. See, also, Jacob's Law Dict. vol. 1, p. 375.

"As we have seen, the definition given by Blackstone is similar to and fully as general as that in our statute upon which the conviction of appellant rests. More modern definitions are equally as broad as many of the ancient ones. Russell on Crimes, gives it as, *Peccatum illud horrible inter christianos non nominandum'* (that horrible crime not to be named among Christians), without further particularity. And this is clearly merely the ancient definition. 7th Eng. Ed. vol. 1, p. 975. In Bishop's New Criminal Law, vol. 2, sec. 1191, the definition is given as 'a carnal copulation by human beings with each other against nature, or with a beast.' See, also, Anderson's Law Dictionary. In 36 Cyc. 501, it is defined as follows: 'Sodomy, in its broadest meaning, is the carnal copulation by human beings with each other against nature, or with a beast, in which sense it includes the crime against nature, bestiality and buggery. In its narrower sense sodomy is the carnal copulation between two male human beings *per anum.'* See, also, *Ausman v. Veal* (1858) 10 Ind. 357, 71 Am. Dec. 331. Modern lexicographers unite in giving the word 'sodomy' a broad and comprehensive definition, as is shown by the definition in the Century Dictionary, which is given as 'unnatural sexual relations, as between persons of the same sex or with beasts.'

"The original authority for the statement found in text books and some American cases that the act involved in this case is not within the common law definition of the crime is the case of *Rex v. Jacobs* (1817) 1 Rus. & Ry. 331. The report of the case is exceedingly short and gives no reason for the conclusion reached. It alone has led a number of text-books on Criminal Law to make the statement that 'to constitute the offense the act must be in

that part where sodomy is usually committed.' Bacon's Abridgment, vol. 9, p. 160; 1 Russell on Crimes (7th Eng. Ed.) p. 976. This very statement, however, is a concession that the offense is sometimes, if more rarely, committed in other ways, and justifies the broader and more comprehensive common-law definitions which we have set out. The case of *Rex. v. Jacobs, supra,* stands alone in England on the question, and no other expression of the courts of that country can be found to limit the broader definitions of the offense given by the great writers on the common law. In view of this fact, we think we are left free to conclude that our Legislature, when it passed the act of 1905 (Burns' Ann. St. 1908, sec. 2374), *supra,* chose rather the broad definition of the crime, which would include those abominations within the mischief of the law, rather than the narrow one which without reason would exclude from punishment a perpetrator of what might well be considered the vilest and most degenerate of all the acts within the inclusion of the broad definition.  *   *   *

"In the well-considered case of *State v. Whitmarsh, supra,* in commenting on the reason given by certain writers on criminal law for the decision in *Rex v. Jacobs, supra,* that, 'to constitute this offense, the act must be in that part where sodomy is usually committed,' it is said: 'The mere statement of the above reason shows the unsoundness of such a distinction. It concedes that the act is sometimes committed in some other part, and, by conceding that the act committed in such other part is not the usual offense, the statement concedes that the act, if committed in such other part, would be still more unnatural, because, if not more unnatural, it would not be more unusual. Certainly this unusual act is many times more "detestable and abominable" than that made criminal at common law. As was well said by the court in *State v. Vicknair,* 52 La. Ann. 1921, 28 South. 273: "But why, in the common-law courts, the use of the mouth should not have been considered as much against nature as though the act were committed *per anum* is incomprehensible." ' "

It is apparent from the authorities cited in the foregoing decisions (which were reached after most thoughtful and deliberate consideration) that the great writers on the common law recognized sodomy to include "all unnatural copulations, whether with man or beast," and in such sense it includes copulation between human beings *per os* as well as *per anum*. This conclusion is also in harmony with the following cases: *State v. Whitmarsh,* 26 S. D. 426, 128 N. W. 580; *Herring v. State,* 119 Ga. 711, 46 S. E. 876; *White v. State,* 136 Ga. 158, 71 S. E. 135; *Honselman v. People,* 168 Ill. 172, 48 N. E. 304. Our statute is the same as that of South Dakota, which was construed by the Supreme Court of that state in *Whitmarsh v. State, supra,* wherein it is said:

"We believe the clause 'crime against nature' as used in our statute was so used intending to include therein every unnatural carnal copulation. The statute of this state (section 10, Rev. Penal Code) provides: 'The rule of common law that penal statutes are to be strictly construed has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and promote justice.' It would be an insult to the Legislature which enacted our statute to hold that from the words of our statute it appears it intended to allow the most heinous form of the crime against nature to go unpunished simply because it was an unusual form of such crime. Even if our Legislature had in such statute used the term 'sodomy,' still we would feel bound to give to such word the broad meaning given to it by lexicographers, which meaning was given to it by at least one common-law authority, as is evidenced by 1 Hawk. Plea of the Crown, p. 357, wherein it was said: 'All unnatural carnal copulations, whether with man or beast, seem to come under the notion of sodomy, which was a felony by the ancient common law.' And we would say with the Georgia court: 'After much reflection, we

are satisfied that, if the baser form of the abominable and disgusting crime against nature—i. e., by the mouth—had prevailed in the days of the early common law, the courts of England could well have held that that form of the offense was included in the current definition of the crime of sodomy. And no satisfactory reason occurs to us why the lesser form of this crime against nature should be covered by our statute, and the greater excluded, when both are committed in a like unnatural manner, and when either might well be spoken of and understood as being "the abominable crime not fit to be named among Christions."' *Herring v. State,* 119 Ga. 709, 46 S. E. 876."

For the reason that it is the opinion of this court that section 2444, Rev. Laws 1910, *supra,* meant to cover sodomy in its broader definition as hereinabove indicated, copulation between human beings through the mouth is included within its prohibitions, and the judgment of the district court of Bryan county pronounced on the petitioner's plea of guilty to the aforesaid charge is valid. The writ is therefore denied.

DOYLE, P. J., and ARMSTRONG, J., concur.