# KENNETH LEFAVOUR v. STATE.

No. A-10183.   Oct. 6, 1943.
(142 P. 2d 132.)

Tom Wallace, of Sapulpa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Everett S. Collins, Co. Atty., of Sapulpa, for defendant in error.

BAREFOOT, J.   Defendant, Kenneth LeFavour, was charged in the district court of Creek county with the crime of sodomy, was tried, convicted and by the court sentenced to serve a term of two years in the State Reformatory at Granite, and has appealed.

Defendant's first assignment of error is:

"The information in this case charged no offense against the laws of the State of Oklahoma; and the Court erred in overruling the demurrer and subsequent proceedings in opposition to the same."

The statute under which defendant was charged, sections 2553 and 2554, O. S. 1931, Tit. 21, O. S. A. 1941, §§ 886 and 887, is as follows:

"Every person who is guilty of the detestable and abominable crime against nature, committed with mankind or with a beast, is punishable by imprisonment in the penitentiary not exceeding ten years.

"Any sexual penetration, however slight, is sufficient to complete the crime against nature."

The charging part of the information was:

"'* * * did, in Creek County, State of Oklahoma, on or about the 20th day of January, 1941, commit the crime of sodomy in the manner and form as follows, to-wit: That Kenneth LeFavour in said county and state aforesaid, on the day and year aforesaid, did, knowingly, wilfully, unlawfully, wrongfully, wickedly and feloniously commit the detestable and abominable crime against nature with a certain child, to wit: Charles Dodson, and did then and there wickedly and unlawfully and feloniously have carnal knowledge of the body of said child, Charles Dodson; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

It is contended by defendant that the allegation above set forth does not comply with section 2883, O. S. 1931, Tit. 22, O. S. A. 1941 § 401, subd. 2, which is as follows:

"A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

Defendant admits that the allegation is in the words of the statute, but contends that the defendant "may have done everything substantially charged therein," yet "have been guiltless of any violation of the laws of Oklahoma on such subject." We have found some authorities that tend to bear out the contention of defendant. People v. Allison, 25 Cal. App. 746, 145 P. 539; People v. Carroll, 1 Cal. App. 2, 81 P. 680, 681; People v. Hopwood, 130 Cal. App. 168, 19 P. 2d 824. But we find that the great weight of authority and the best reasoned cases are in accord in holding that the allegations of an indictment or information in the same or substantial language of the statute is sufficient. Among these decisions are several from this court. See, also, 58 C. J. p. 790, § 11; State v. Douglass, 66 Wash. 71, 118 P. 915; People v. Dong Pok Yip, 164 Cal. 143,

127 P. 1031; State v. Morasco, 42 Utah, 5, 128 P. 571; Honselman v. People, 168 Ill. 172, 48 N. E. 304; Kelly v. People, 192 Ill. 119, 61 N. E. 425, 85 Am. St. Rep. 323; Commonwealth v. Dill, 160 Mass. 536, 36 N. E. 472; State v. McAllister, 67 Or. 480, 136 P. 354; Ex parte Benites, 37 Nev. 145, 140 P. 436.

In the early case of Ex parte De Ford, 14 Okla. Cr. 133, 168 P. 58, this court in an opinion by Judge Matson gave a history of this statute, and of the crime of sodomy, and reviews some of the leading decisions on this question. It is unnecessary to quote at length from this case. It may be read by those who desire. The court comes to the conclusion that under our statute, which was taken from the South Dakota statute, and in conformity with the opinions from many courts of this country, the terms of the statute include copulation between human beings per os, as well as per anum. This decision is contrary to the rule announced in the case of Koontz v. People, 82 Colo. 598, 263 P. 19, cited by defendant, which seems to be based upon the peculiar wording of the statute of that state. Note 45 L. R. A., N. S., 473; Glover v. State, 179 Ind. 459, 101 N. E. 629, 45 L. R. A., N. S., 473; State v. Start, 65 Or. 178, 132 P. 512, 46 L. R. A., N. S., 266; State v. Whitmarsh, 26 S. D. 426, 128 N. W. 580; State v. Long, 133 La. 580, 63 So. 180; Herring v. State, 119 Ga. 709, 46 S. E. 876; White v. State, 136 Ga. 158, 71 S. E. 135.

In the case of Borden v. State, 36 Okla. Cr. 69, 252 P. 446, this court had under consideration one charged with having committed the detestable and abominable crime against nature upon a boy 13 years of age. It was contended as in the instant case that the information did not state facts sufficient to constitute an offense and was "uncertain and insufficient, in not alleging the particular

circumstances of the offense." The allegations of the information in that case were: "the defendant did then and there willfully, unlawfully, and feloniously make an assault upon one Fred Freeman, a male person 13 years of age, and did unlawfully, intentionally, forcibly, and against the order of nature have a venereal affair with the said Fred Freeman, and did commit the abominable and detestable crime against nature."

After quoting the statute, Judge Doyle, who wrote the opinion of the court, said:

"The statute gives no definition of the crime which the law with due regard to the sentiments of decent humanity has always treated as one not fit to be named. It was never the practice to describe the particular manner or the details of the commission of the act. Even in the time of Blackstone this rule was applied to the common-law crime of sodomy. 4 Bl. Comm. 215.

"In the following cases it is held that an indictment or information, charging the commission of the crime against nature, in the language of the statute, is sufficient. Honselman v. People, 168 Ill. 172, 48 N. E. 304; Kelly v. People, 192 Ill. 119, 61 N. E. 425, 85 Am. St. Rep. 323; State v. Whitmarsh, 26 S. D. 426, 128 N. W. 580; Herring v. State, 119 Ga. 709, 46 S. E. 876. * * *

"It follows from what has been said that the demurrer to the information was properly overruled."

In the case of Roberts v. State, 57 Okla. Cr. 244, 47 P. 2d 607, 610, the court again had before it a case of this kind. The witnesses were two small girls, nine and eight years of age. The charging words in the information were that the defendant: "did 'unlawfully and feloniously and against the order of nature have a venereal affair with the said Dora McNeil and did commit the abominable and detestable crime against nature.' "

The court said:

"The information is sufficient and the demurrer thereto was properly overruled."

It will be noted that the charge in this case is very similar to the charge in the instant case, only that the act was with a girl, and not a boy. The case was reversed, but it was because of other errors. It has been held that the word "mankind" as used in our statute includes a female and that it is not necessary to allege in the indictment or information the sex of the person on whom the offense was committed, this being immaterial. Lewis v. State, 36 Tex. Cr. R. 37, 35 S. W. 372, 61 Am. St. Rep. 831; Adams v. State, 48 Tex. Cr. R. 90, 86 S. W. 334, 122 Am. St. Rep. 733.

We are, therefore, of the opinion that the court did not err in overruling the demurrer to the information filed in this case.

It is next contended that the court erred in permitting two young boys to testify, one being nine and the other ten years of age. We have had occasion to quote and discuss the statute (272, O. S. 1931, Tit. 12, O. S. A. 1941 § 385) which specifies what witnesses may testify, in the case of Daves v. State, 77 Okla. Cr. 343, 141 P. 2d 603. It is not necessary to further discuss it, only to say that the courts are almost unanimous in construing statutes like and similar to this. The question of whether a child possesses the necessary qualifications to testify is for the determination of the trial court in the exercise of a sound discretion, and unless the appellate court is of the opinion that this discretion has been abused, his ruling in this regard will not be set aside.

This rule is based upon the sound reason that the trial court, having the witness before it, is in better position to judge of the capability or incapability of the

witness than is the appellate court, who must rely upon the record. The true test of the competency of an infant to testify is intelligence, and not age.

Counsel for defendant seems to realize that the witness was capable to testify, as the record reveals this statement by him:

"Mr. Wallace: I believe the court will agree with me that he is an unusual bright witness. The Court: I agree with you that he is an unusually bright witness for his age, certainly. Don't lead the witness."

The record does not reveal that the court questioned the witness as to his knowledge of right and wrong, and as to whether he knew that he would be punished if he testified falsely. We think it is the better practice for this to be done and let the record so show. Evidently the court had sufficient reason for coming to the conclusion that the witness was of such intelligence that he was competent to testify, and for this reason he was not examined. The evidence given by these two witnesses is not such as would cause one to believe that they were not qualified to testify. Under cross-examination, and being confronted with prior statements, they, like any child, made some contradictory statements, but we think their evidence should be examined as a whole in view of all the facts and circumstances in the case, and thus come to a conclusion as to whether their statements are such that they are not to be believed because of their contradictions. No motive to falsely accuse the defendant was sufficiently established. The parents of these boys were anxious that the guilty party be punished, but there is nothing in the evidence from which we can discern a motive to falsely charge this defendant.

We also call attention to the fact that while we consider it the best practice for the court to give a prelim-

inary examination of the witness when objection is made thereto, yet in the instant case, when the witness Charles Dodson was placed upon the witness stand and objection made to his testifying by the defendant on account of his age, the witness was turned over to counsel for defendant for examination as to his qualifications. Counsel then asked the witness:

"Mr. Wallace: Q. What is your age? A. What? The Court: Q. How old are you? A. Eight. Mr. Wallace: At this time we object to the testimony of the witness unless he is further shown to be qualified. The Court: Well, I understand it is within the sound discretion of the court to pass on it. It is not a question of age, but a question of the intelligence of the child, and I think this boy can tell the jury all he knows about it. Overruled."

No further questions were asked. Evidently counsel was relying upon the fact that the witness was under ten years of age and was therefore disqualified by reason of sec. 272, O. S. 1931, Tit. 12, O. S. A. 1941 § 385.

By the cases heretofore cited, it will be noted that in construing this statute, it has been held that intelligence, and not age, is the proper rule, and unless it is shown by the record that the discretion of the trial court in permitting the witness to testify has been abused, this court will not overrule the same.

The general rule was announced in the case of State v. Newman, 66 Mont. 180, 213 P. 805, 806, where the court says:

"Before any testimony was given in the case, upon Agnes Flannigan being called and sworn, the defendant interposed an objection to her being permitted to testify in the case on the ground that she was the wife of the defendant. The court ruled: 'We will presume that she is not. The objection will be overruled.' The court's preliminary remark was highly objectionable, but the

ruling was correct. The defendant could not place a seal upon the lips of the witness by merely asserting incompetency by reason of the alleged relationship. There is no presumption that a witness is incompetent; and upon this preliminary matter the party insisting on the disability to testify must prove that the relationship of husband and wife exists. Jones on Evidence § 744; Greenleaf on Evidence, § 339; Wharton, Cr. Ev. (10th Ed.) § 390.

"'The orthodox division of function between judge and jury allots, without question, to the judge the determination of all matters of fact on which the admissibility of evidence depends; and therefore of the facts of a witness' capacity to testify.' Sections 10698, 10699, Rev. Codes 1921; Wigmore on Evidence, § 487.

"'There are two modes by which the competency of a witness may be determined; and the party who objects to a witness may, of right, adopt either. He may examine the witness upon his voir dire, or he may prove the alleged incompetency by evidence aliunde.' People v. Anderson, 26 Cal. [129], 130.

"At the conclusion of the voir dire examination, or from the evidence aliunde, the court determines whether or not the witness is competent. State v. Hancock, 28 Nev. 300, 82 P. 95, 6 Ann. Cas. 1020; Flanagin v. State, 25 Ark. 92, 95; Rickerstricker v. State, 31 Ark. 207, 209. The defendant did not avail himself of either of the means open to him for testing the competency of the witness. He did not ask to examine the witness on voir dire, nor ask the court to do so. Neither did he request the right to produce evidence aliunde to prove the alleged relationship. It is not error for a trial court to permit a witness to testify, without voir dire examination, over an objection as to her competency, if it appears from all of the evidence given at the trial that she was competent. State v. Simes, 12 Idaho 310, 85 P. 914, 9 Ann. Cas. 1216."

No case cited by the defendant holds that it is absolutely necessary for the court to examine the witness

prior to his determination of his competency.

The jury returned a verdict finding the defendant guilty, as charged in the information, "but failed to agree upon his punishment therefor, because of our inability to agree upon such punishment, after using all possible efforts to so agree." When the court entered judgment and sentence against the defendant, it contained this statement: "and said jury having returned into open court a verdict of guilty and fixed the punishment of said defendant at two years in the state reformatory at Granite, Oklahoma."

It is contended by defendant that by reason of this statement in the judgment and sentence that the jury assessed his punishment at "two years in the state reformatory," he was prejudiced thereby, that this is a sufficient reason for reversing this case. We do not think so. The adding of these words to the judgment is merely surplusage, and was evidently a mistake of the clerk in preparing the judgment, which was signed by the court. Under the statute, as instructed by the court, punishment could have been assessed not to exceed ten years in the penitentiary, and the court had the right to assess the punishment for a period of two years, as was done. We fail to see where the defendant was prejudiced. No authorities are cited by defendant to sustain this contention.

The facts in this case are such that we do not care to place them in print. The evidence of the two witnesses who were small boys, when taken as a whole, is not unreasonable, although revolting. One of the boys testified to three different occasions, and the other corroborated this evidence as to one occasion when he was present in person and witnessed the act. The jury had an opportunity to see and hear these witnesses, and after so doing, found the defendant guilty of the crime charged. This

finding was approved by the trial court, it is not for this court to interfere. The evidence of neither of the boys was such as to make him an accomplice, under the laws; and the evidence of Charles Dodson was corroborated, if it had been necessary to do so. This defendant is a young! boy, 16 years of age. The crime with which he is charged is one of the most revolting known to the law. We have carefully examined the record, and from such examination we have found no error that justifies the setting aside of the verdict of the jury, rendered in this case. The defendant had a fair and impartial trial, and while it is hard for this court to think of a young boy of this age being sent to the penitentiary, yet the law is so written that everyone must answer for the crime which he has committed. Under the Constitution and laws of this state, the pardon and parole power is vested in the Governor of the State. He may act as to him is deemed advisable.

Finding no error, the judgment of the district court of Creek county is affirmed.

JONES, P. J., and DOYLE, J., concur.