Locke *vs.* The State. ,

No. 70.—William Locke, plaintiff in error *vs.* The State of Georgia, defendant in error.

[1.] In an indictment under the 26th section, 11th division of the penal code, for bastardy, it is necessary to charge distinctly that the defendant is the father of the bastard child.

[2.] The facts that the defendant is the father, and that he has failed or refused to give the bond in pursuance of law for the education and maintenance of the child, constitute the offence.

Indictment for bastardy. Tried before Judge Holt. Washington Superior Court. September Term, 1847. Verdict guilty.

It was not averred in the indictment that the plaintiff in error was the father of the alleged bastard child. For a copy of the charging part of the indictment, see the opinion delivered by the Supreme Court.

Several grounds of error were taken by counsel for the plaintiff in error. The only one considered by the Supreme Court was that predicated upon the refusal of the Court below to arrest the judgment, to wit, *that it was not charged that the plaintiff in error was the father of the alleged bastard child.*

The other grounds of error not having been considered by the Supreme Court, are omitted.

Johnston & Thomas, for the plaintiff in error.

Flournoy & McConnell, for the State.

Locke *vs.* The State.

*By the Court.*—NISBET, J., delivering the opinion.

The bill of indictment in this case charges the defendant with a misdemeanor, "for that the said William Locke, (the defendant) of the county of Washington aforesaid, on the sixteenth day of June, in the year of our Lord one thousand eight hundred and forty-seven, with force and arms, in the county of Washington aforesaid, was arrested, by virtue of a warrant issued by one Green Andrews, a justice of the peace in and for the county aforesaid, having lawful and competent authority in the premises; which was issued upon the affidavit of one Nancy, alias Ann Wells, (a free single white woman,) charging the said William with being the father of a child with which she was pregnant, and which was likely to be born a bastard and to become chargeable to the county ; and that the said William was taken by virtue of said warrant before the said Green Andrews, justice of the peace aforesaid, and by him required to give bond and security in terms of the law, for the maintenance and education of the said child, which the said William then and there, to wit, in the county and State aforesaid, refused and failed to do, and so the jurors aforesaid &c."

Upon the trial of this indictment the defendant was found [1.] guilty. A motion was made to arrest the judgment upon several grounds, which was refused by the presiding judge. Error is assigned upon the grounds taken in the motion to arrest. As we are of opinion that the motion ought to have been granted upon one of the grounds taken, it will not be necessary to express any opinion as to the others. It is urged that the bill of indictment does not charge the defendant with being the father of the child ; that therefore no issue was made before the jury as to that fact ; that he is found guilty only of the facts charged in the indictment, and that those charges not amounting to any offence known to the laws of Georgia, he is guilty of and can be punished for no offence, and therefore the judgment ought to be arrested. In other form, it is contended that the indictment is fatally defective in this, that it does not charge the defendant with being the father of the child. We think it is fatally defective in that particular, and as it stands, charges the defendant with no offence known to our laws. Whether it be or not necessary to charge the defendant with being the father of the child, depends upon what constitutes this

misdemeanor; it is an offence created by our penal code ; it will be necessary therefore to refer to the statutes.

The act "respecting bastardy and other immoralities," passed in 1793, (*Prince* 140,) provides, that any justice of the peace, upon his own knowledge or upon information, of any free white woman having a bastard child, or being pregnant with one which it is probable will become chargeable to the county, may cause the offender to be brought before him by warrant, and require her to give bond and security for the support and education of the child until it arrives at the age of fourteen, *or to discover on oath the father*. If the mother discovers on oath the father, it is then made the duty of the magistrate to cause such reputed father to be brought before him upon warrant, and upon his refusal to give bond and security for the maintenance and education of the child until the age of fourteen years, for the lying-in expenses and the board, nursing and maintenance of the mother whilst she is confined, to bind him over in a sufficient recognisance, to be and appear at the next Superior court of the county.   It further makes it the duty of the prosecuting officer at that court, to prefer a bill of indictment against the reputed father, to answer such complaint as may be then and there alleged against him.   The character of the *complaint* is not prescribed in this act, that is, the offence is not defined; but it is defined in the penal code subsequently adopted, in these words, to wit: "If any putative father of a bastard child or children, shall refuse or fail to give security for the maintenance and education of such child or children, when required to do so in terms of the law, such putative father shall be indicted for a misdemeanor, and upon conviction of the fact of being the father of such bastard child or children, and of his refusal or failure to give such security, he shall be punished by a fine of $700 for each child;" and if he is unable to pay the fine, the penal code declares that he shall be punished by confinement in the county jail for the space of three months.   Under this clause of the penal code the defendant was indicted.   The act of 1793 is referred to as a clue to the meaning of the code, although without it, its meaning would not be difficult of ascertainment.   The primary object of the act of 1793, was to protect the county from the charge of bastard children; this it seeks to accomplish by requiring the mother, at her option, to give bond and security for the education and maintenance of the child, or disclose its father on oath.   If the former is done, then there is an end to the whole matter; if the latter,

then the object is sought to be accomplished by requiring the father, at his option, to give the bond, or execute a recognisance to appear and answer before the Superior court to the charge of a misdemeanor, as defined in the code. If the former is done, then again the whole matter is at rest; if the latter, then comes the indictment and trial. The proceedings under the act of 1793, are civil rather than criminal, and are very much *exparte* in their character.

Now, if the offence consists in the refusal or failure to give the bond according to the act of 1793, then this indictment is sufficient, for, in addition to the recitals in it, it expressly charges such refusal. We think the offence does not consist in the refusal, or failure to give bond—that is, the offence is not complete by reason of such failure. The option allowed the reputed father, to give the bond or appear and answer, is for his benefit. It is in the nature of an appeal from the judgment of the magistrate, that he shall give the bond. That judgment is founded on the oath of the woman. The act of 1793 seems to be imperative upon the magistrate to arrest the reputed father, upon her oath revealing his name, and equally imperative when he is arrested, to exact the bond, or bind him over. Whether he has the right to traverse the oath of the woman, and show that he is not in fact the father, before the magistrate, has been questioned. By the act of 1802, it would seem that this right is given. But if he has the right, still it is only before the magistrate; it is no trial by a jury upon indictment found and setting forth distinctly the nature and grounds of his offence. His guilt or innocence is made to depend upon the discretion of the magistrate. For, if the offence consists in the failure or refusal to give bond, then upon the trial before the Superior court, the case is made out by proof that he did so fail or refuse. Upon this construction he is deprived of his day in court, of the right of trial by jury, and of all its incidents. Upon the oath of a lewd woman and a judgment of a justice of the peace, he is found guilty of being the father of a bastard child. We cannot believe for a moment that this offence is complete upon the reputed father's refusing or failing to give bond. Whilst we admit that he can in no case be put upon trial, much less convicted, if he does give the bond, and that there can be no offence unless he does refuse or fail to give it, and whilst we hold that such refusal or failure must be averred in the bill of indictment and proved upon the trial, yet we hold that the *fact* of being the father, constitutes the misdemeanor, and that that fact must be distinctly

alleged in the indictment. It is true that the defendant cannot be found guilty, unless it be proven that he did in fact refuse or fail to give bond; it is, however, not the less true, that he cannot be found guilty unless he is proven to be the father of the child. This view of the subject is demonstrated to be the true view, by reference to the definition of the offence in the code already quoted. It is therein declared, that if the putative father shall refuse or fail to give security for the maintenance and education of the child, &c., he shall be indicted for a misdemeanor, "*and on conviction of the fact of being the father of such bastard child or children*, and of his refusal or failure to give such security, he shall be punished," &c.

His punishment is made to depend upon the fact of his being the father—upon *conviction* of the *fact;* without conviction, that is, without the finding of that fact by the jury, he cannot be punished. The necessity of his being convicted of that fact, is not weakened by the further necessity that he must be convicted of a refusal or failure to give bond. I believe that this meaning of the legislature is as plain as if they had said, this misdemeanor shall consist in being the father of the child and in refusal or failure to give bond for its maintenance and education. If, then, the offence consists in part or in whole of being the father of the child, is it necessary to charge it in the indictment? As to this we are all clear; we think it ought to be charged, not by inference or implication, but distinctly and substantively charged.

This indictment would be bad at common law. Before proceeding, I premise that greater strictness is required in criminal than in civil proceedings. 1 *Chitty Crim. Law*, 172; 1 *Leach* 134, 145. The rule at common law is, that indictments should be framed with sufficient certainty; for this purpose the charge must contain *a certain description of the crime* of which the defendant is accused, and a *statement of the facts by which it is constituted*, so as to identify the accusation. *Cowp. R.* 682, 683; 5 *Term R.* 611, 623; 1 *Leach* 249; *Fost.* 194; 2 *Term R.* 586; 3 *Inst.* 41; 2 *M. & S.* 386; 1 *Chitty Crim. Law*, 168, 169, 170. The reasons for this rule are, that the defendant may not be put upon his trial for an offence different from that which the grand jury have found; that the defendant may know what crime he is called upon to answer; that the jury may know what issue is presented to them to find, and may be warranted in their verdict of guilty or not guilty; that the court may see such a definite offence on

record that they may apply the judgment and the punishment which the law prescribes; and that the defendant's conviction or acquittal may insure his subsequent protection should he again be questioned on the same ground, and enable him to plead his conviction or acquittal in bar of any subsequent proceedings.   If I am right as to what constitutes this crime, then I say there is no *certain description* of the offence, because in the bill there is no allegation of that fact, which is indispensable to the perfecting the offence, to wit, the paternity of the child.   There can be no *certainty* in the description of a fact, when there is no attempt to describe that fact whatever.   All the reasons given for the rule, illustrate the glaring deficiency of this bill; their application is so easy, that any attempt to make it would be a work of supererogation.

The next question is, is the indictment sufficient under our own [2.] statute?   The legislature have declared that " Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offence in the terms and language of this code, or *so plainly* that the nature of the offence charged may be *easily understood* by the jury."   *Prince* 658.   I think that it will scarcely be said that this indictment states the offence in the language and terms of the code, since none of the terms or language of the code, in relation to the paternity of the child, are found in it.   Does it, then, so plainly state the offence that its nature may be easily understood by the jury?   It now becomes necessary to refer to the statements in the bill.   The facts stated therein are, that the defendant was arrested by virtue of a warrant issued by one Green Andrews, a justice of the peace; that the warrant was issued upon the affidavit of one Nancy *alias* Ann Wells, a free single white woman, charging him with being the father of a child with which she was pregnant, and which was likely to be born a bastard, and to become chargeable to the county; that the defendant was brought before the said Green Andrews, and by him required to give bond and security, in terms of the law, for the maintenance and education of the child; which bond the defendant refused and failed to give.   These are all the statements in the bill that are material.   An intelligent juryman, by hearing this indictment read, might infer that the defendant was charged with being arrested under this warrant; that he was charged with being arrested under a warrant which issued on the affidavit of one Nancy, or Ann Wells, which affidavit charged him

with being the father of a bastard child ; and that he was also charged with refusing to give bond and security for the maintenance and education of the child. All these things he might understand; he would, however, naturally inquire, what is the issue made ? what am I to try ? My verdict is to be guilty or not guilty, but not guilty or guilty of what ? His conclusion must be, that the issue for him to try is this : is the defendant guilty or not guilty of failing or refusing to give the bond ? He would infer, and such is the inference of the law on this bill of indictment, that that was the issue presented for his determination, and that the offence charged consisted in the defendant's refusal to give the bond. But upon the ruling of this Court that the offence does not consist in that alone, but mainly in the fact that the defendant was the father of the child, could he *easily* infer that he was called upon to try whether he was or was not the father ? In the absence of a dis-. tinct allegation that the defendant was the father of the child, could the juryman *easily understand* the *nature* of the offence charged ? We think he could not. The requirement of the statute is, that the offence must be so *plainly* stated that the juryman may *easily* understand its nature. Our construction of this statute is, that the indictment should leave nothing to inference or implication ; but that its statements should be so plain that a common man may without doubt or difficulty, from the language used, know what is the charge made against the accused.

This indictment was, no doubt, held sufficient in the Court below, upon the ground that the charge that the defendant was the father of the child, was to be inferred or implied from the statements made—that such was the intendment of the law. We hold that in criminal pleadings, both under our statute and at common law, defective allegations cannot be helped by legal intendment. " The charge (says Mr. Chitty) must be sufficiently explicit to support itself; for no latitude of intention can be allowed to include any thing more than is expressed." 1 *Chitty Crim. Law*, 172.

In the case of *The King* vs. *Wheatly*, 2 *Burrow R.* 1127, Lord Mansfield holds the following language : " But after a verdict they (the court) are obliged to arrest the judgment if they see the charge to be insufficient. And in a criminal charge there is no latitude of intendment to include any thing more then is charged. The charge must be explicit enough to support itself." See also, 2 *M. & S.* 381.

In the case of *The United States* vs. *Clark*, 1 *Gallison C. C. R.*

497, it is ruled, that an indictment for an offence created by statute must bring the case within the terms of the statute, and no argumentative inferences will supply the want of direct averments of material facts.

Admitting every thing to be true which this bill charges, the defendant is not guilty of any offence for which he can be punished. The judgment therefore must be arrested.

Judgment arrested.