## CHICAGO BUILDING AND MANUFACTURING COMPANY
## v. BUTLER *et al.*

1. Where a judgment excepted to is erroneous in part and can be segregated so that the legal part can be separated from the illegal, it is not necessary to set aside the entire judgment, but only the portion which is erroneous.

(*a*) Where a number of persons have been sued and a verdict has been rendered in favor of all the defendants, and where on review the evidence shows that the verdict is sustained as to all the defendants except two, and there is no evidence to support the verdict as to them, the judgment of the trial court, overruling a motion for new trial, will be affirmed as to all of the defendants except the two in whose favor there was no evidence, and as to them the judgment will be reversed.

2. It was not error to exclude the following evidence offered by the plaintiff, where it does not appear that the defendants were present and were connected in some way with the transaction, to wit: "When I commenced soliciting subscriptions, a meeting was held at the court-house at Greensboro, Georgia, and at this time I read the contract in full and explained exactly what would be necessary, and in fact that unless we were able to secure at least fifty signatures covering fifty shares of stock at $100.00 each, the contract would be null and void and not binding on any of the parties."

3. Before a paper purporting to be signed by a person can be admitted in evidence, the purpose of introducing which paper is to have a comparison by the jury of the signature to the paper with the signature to another paper which is sued upon and to which a plea of non est factum has been filed, it is necessary that the signature to the former paper shall be legally proved, or acknowledged to be genuine.

4. The general rule is that parol contemporaneous evidence is not admissible to contradict or vary the terms of a valid written instrument. But where a written instrument is sued upon, and the alleged makers file pleas of non est factum, and that the instrument was procured by fraud, evidence tending to support such pleas is admissible.

(*a*) In such a case, evidence tending to show that the alleged makers did not sign the alleged contract sued on, and that the contract was procured by fraud, is not inadmissible as contradicting or varying the terms of a valid written instrument. It denies the existence of such a contract.

5. Where a member of a partnership signed the firm name to a contract which was as to a matter not legitimately connected with the partnership business, and the partner so signing had no authority to sign such contract, it is not error to allow another member of the firm to testify, on the trial of a case in which the members of the firm were codefendants, that the firm had agreed among themselves that they did not want any stock in the business that the contract was signed to secure.

6. In this State a wife is a feme sole as to her separate estate, and her husband can not bind her or her property without her authority. Consequently, where suit was brought against a wife on a contract alleged to have been signed by her, to which suit she had filed a plea of non

est factum, it was not error to exclude from the jury a postal card written by the husband to the agent of the plaintiff, authorizing the agent to "put down one share" of the stock called for in the contract to the wife.

7. It was not error to refuse to allow the attorneys for the plaintiff to put in evidence a copy of a notice and to testify, in connection therewith, that the same was a copy of a notice sent to each defendant in a suit brought to recover principal, interest, and attorney's fees, for an alleged breach of a contract, showing that the attorneys held the claim sued on for collection, including attorney's fees.

8. Where by the terms of a written contract a butter factory was to be built according to specifications by one of the parties and turned over to the other party thereto on the completion of the plant, a written receipt, accepting the plant as complying with the terms of the contract and signed by persons other than the parties defendant to the suit, was not admissible in evidence as against those alleged to have breached the contract, it not appearing either that they signed the receipt, or that the committee signing the receipt was one appointed and acting under authority of the contract.

9. The following charge of the court was not erroneous because of the use of the word "requires:" "Where you find there is conflict in the evidence, the law requires you to reconcile that conflict without imputing wilful perjury;" especially where the court followed this language immediately with the following: "If, however, you find a conflict in the evidence, and are unable to reconcile it, the law requires that you take the entire testimony, search it carefully for the truth, and where you find that truth to be, let that establish and control your verdict."

APRIL 16, 1913.    REHEARING DENIED MAY 16, 1913.

Complaint. Before Judge Rawlings. Greene superior court. July 24, 1912.

*Joseph P. Brown* and *F. B. Shipp,* for plaintiff.

*George A. Merritt* and *Noel P. Park,* for defendants.

HILL, J. The Chicago Building and Manufacturing Company brought suit against F. J. Butler and eighteen others, and alleged that the defendants were subscribers to a contract wherein each agreed to pay $100, subject to the conditions of the contract, the material portions of which are hereinafter set out. The defendants were alleged also to be members of the Greensboro Creamery Association, referred to in the contract as the first party thereto. By the terms of the contract the plaintiff was to erect, build, equip, and deliver to the defendants a butter factory, in consideration of the purchase-price of $4,950. The contract stipulates that "For any unpaid or deferred balance of subscription all delinquent subscribers are jointly liable." It is also provided that when "any payment is deferred, all necessary costs of collection and

discount may be included, should second party so desire. All remaining subscriptions or note balance, after said association's entire indebtedness to second party has been so paid, shall be duly assigned to the said corporation for a working capital." Also, "Pursuant to the laws of his State and these conditions, it is agreed that each stockholder shall be liable for the amount of stock set opposite his or her name, and no more." It was alleged that all the defendants signed and subscribed to said contract, or authorized their signatures and subscriptions thereto, and became bound by the terms of the contract, and were each severally liable on the contract, as members of the Greensboro Creamery Association, to the plaintiff for the balance due, amounting to $2,000, besides 33-1/3% of the amount recovered, which the plaintiff agreed to pay its attorneys of record. The prayer of the petition was for a joint and several judgment against all the defendants for principal, interest, and attorney's fees.

The defendants filed their plea of non est factum; and set up that the alleged contract was obtained from them by the agents of the plaintiff through fraud, in that the subscription-list paper was folded by the plaintiff's agents so as to conceal from defendants the written contract on the other side, and by certain misrepresentations made by those agents as to matters not embraced in the contract; that the figures "1" to "100," representing respectively the number of shares of stock and the price thereof, appearing opposite their names, were not on the paper when they signed, and were not placed there by their consent or with their knowledge; and that the paper the defendants signed was a blank sheet containing only the names of a sufficient number, as the agents of the plaintiff represented, to insure the building of the plant, and defendants did not know they were signing a contract with conditions as set out in the contract sued on. Demurrers in abundance were filed by both the defendants and the plaintiff, some of which were sustained and some overruled by the court. After much evidence pro and con, the case went to the jury, which returned a verdict for all the defendants. A motion for a new trial was overruled, and the plaintiff excepted.

1. The assignments of error upon the overruling of the various demurrers are without merit. The verdict is supported by the evidence as to all the defendants except two, namely, W. F. Jackson

and O. A. Parker. They filed the same answers and defenses as
the other defendants; and we have searched the record and fail to
see any evidence supporting their defense.    The plaintiff made
out a prima facie case against all the defendants.   If the evidence
supported the defense filed by these two defendants, we would have
little difficulty in affirming the judgment of the court below as to
all the defendants; but there being nothing in the record to support
the defense of the two defendants named, we are confronted with
the question whether we can affirm the judgment as to the other
defendants, and reverse it as to these two.   We understand the
rule to be that where a judgment is entire and indivisible, it can
not be affirmed in part and reversed in part, but the whole must
be set aside if there be reversible error therein.  3 Cyc. 448 (b);
1 Black on Judgments, § 211.   But where a judgment appealed
from can be segregated, so that the correct portions can be sep-
arated from the erroneous, the court will not set aside the en-
tire judgment, but only that portion which is erroneous.   3 Cyc.
447 (2); *Austin* v. *Appling,* 88 *Ga.* 54 (5), 59 (13 S. E. 955);
*Caudell* v. *Caudell,* 127 *Ga.* 1 (3), 4 (55 S. E. 1028); *Brown*
v. *Tomberlin,* 137 *Ga.* 596, 601 (73 S. E. 947); *Crooker* v. *Ham-
ilton,* 3 *Ga. App.* 190 (59 S. E. 722).  See Powers *v.* Irish, 23
Mich. 429, 438.   Assuming that the authorities last cited sup-
port the rule that the legal portion of a judgment can be sep-
arated from the illegal, let us turn to the evidence and see whether
it supports a verdict for all the defendants except the two named
above.   Each of the defendants (other than the two named)
testified substantially in support of their answers.    The testi-
mony of these witnesses tended to show that they did not sign
the contract sued on and attached to the petition, nor did they au-
thorize any one else to sign their names thereto; that all they
signed was what purported to be a subscription list only for the
tentative purpose of ascertaining, according to the representations
of the agents of the plaintiff, whether the desired number of sub-
scribers (fifty) could be secured.  If a sufficient number could be
obtained, then a meeting was to be called and an organization was
to be perfected by all the subscribers, but no liability was to attach
to any of the subscribers until the requisite number were obtained
and the meeting called.   If any other paper containing a contract
was attached to the subscription list, the agents of the plaintiff did

not exhibit it to the defendants, but kept it concealed for the purpose of perpetrating a fraud upon the defendants. The agents represented, at the time, that no other obligation or contract was connected with the subscription list; that if the creamery or butter factory could be organized, the plaintiff would put it in operation and the subscribers could get thirty cents per pound for their butter; and that the plaintiff had a process by which the onion and bitter-weed taste and odor in milk and butter could be removed, and they would put in a pasteurizer to kill the germs, and the milk would not sour. The testimony for the defendants (other than the two named) tended to show that the butter made by the plaintiff at the creamery built by it did not bring thirty cents per pound, and the onion and bitter-weed taste and smell were not removed from the milk and butter. The creamery after it was put in operation was not a success, and a great amount of butter was lost on account of the fact that there was no way to keep it, etc. One of the witnesses for the defendants testified (what was substantially testified by all who did testify) as follows: "I signed contract on those representations. Said he would guarantee it. Said would have meeting in court-house and would be fixed. Didn't see anything except list on that I signed. He said paper I signed' was list of names. Told him I wouldn't pay one nickel for common creamery. There was no such contract as exhibited to me [indicating]. Paper I signed wasn't read over to me. Didn't see anything but names. Said if got up would call meeting and complete it. I signed thinking it was going to be $100 a share, provided they organized. He did not tell me I would be liable for anybody who didn't pay. He said nothing about being my agent. When I signed paper it was doubled up and a clamp through there, so that all printing and writing were hidden and nothing but the list of names could be seen. . . I signed paper on his representations to get out bitter weed, onion, and souring, and to ship to Jacksonville, Fla., a good market." The testimony for the plaintiff was, in the main, in direct conflict with that of the defendants. From the evidence we think the jury was authorized to find a verdict for all the defendants, except the two named above. As to these two there seems to be no evidence which would authorize the jury to find in their favor; and we therefore affirm the judgment of the court below as to all the defendants except the

two named above, and reverse the judgment and order a new trial as to W. F. Jackson and O. A. Parker.

2. The seventh ground of the motion for a new trial assigns error because the following evidence contained in the interrogatories of one of the plaintiff's witnesses was withheld from the jury, to wit: "When I commenced soliciting subscriptions, a meeting was held at the court-house at Greensboro, Georgia, and at this time I read the contract in full and explained exactly what would be necessary, and in fact that unless we were able to secure at least fifty signatures covering fifty shares of stock at $100 each, the contract would be null and void and not binding on any of the parties." It is insisted that this evidence was material to rebut the pleas and answers of the defendants. It does not appear that the defendants were present and were connected with the meeting, and therefore the evidence was properly excluded.

3. Error is assigned because the court refused to allow the original tax returns containing the signatures of L. A. Boswell and J. E. Baynes, two alleged signers of the contract sued on, to go in evidence on the plaintiff's demand, after the reception of evidence by E. L. Lewis, the tax-collector of Greene county, tending to show that he brought them into court under a subpœna duces tecum from his office, where they had been returned by the tax-receiver of Greene county; and the further testimony of the receiver, Dolvin, which tended to show that he signed the returns as such receiver as a witness, and that he would not have signed as a witness if the returns had not been signed in his presence, and to the best of his recollection it was the original signature of the party signing the returns. The court, after this, asked the tax-receiver, Dolvin, if he knew it was L. A. Boswell's signature, and the witness answered, "No, sir." It is insisted that the returns should have been admitted to prove the signatures of Boswell and Baynes, the alleged signers of the contract sued on, by a comparison of the handwriting. The court did not err in excluding this testimony. Proof of handwriting may be resorted to in the absence of direct evidence of execution. In such a case any witness is competent to testify who will swear that he knows or would recognize the handwriting. Civil Code, § 5835. Other writings, proved or acknowledged to be genuine, may be admitted in evidence for the purpose of comparison by the jury. Civil

Code, § 5836. But before a paper purporting to have been signed by one can be admitted in evidence, the purpose of tendering which paper is a comparison by the jury of the signature thereto with the signature to another paper sued upon, and to which a plea of non est factum has been filed, it is necessary that the signature to the former paper shall be legally proved or acknowledged to be genuine. *McVicker* v. *Conkle,* 96 *Ga.* 584 (24 S. E. 23).

4. Complaint is made that the court erred in admitting the testimony of A. S. Mosely, one of the defendants, to the effect that Moore, the plaintiff's agent, who procured the name of the witness to the contract sued on, represented to Mosely that the creamery would take out the onion and bitter-weed taste from the milk and butter treated by the creamery. The objection is that this was extraneous parol evidence tending to add to, vary, and contradict the terms of a written contract. The general rule is that parol contemporaneous evidence is not admissible to vary or change the terms of a valid written contract. Civil Code, § 5788. If the defendants signed the contract sued on, the rule invoked would apply. But they deny signing it. They insist that there is no contract, and that what purports to be such was procured through the fraudulent representations of the plaintiff's agent. That is the issue in the case. If they only signed a blank sheet of paper, as they allege, instead of signing a written and printed contract, they are not liable on it; and the evidence tending to prove this was admissible. Under the allegations contained in the defendants' answer, we think the evidence was admissible. See Civil Code, § 5790.

5. Error is assigned because the court admitted, over objection, the testimony of G. S. Miles, one of the defendants, which was in substance that the firm of Miles, Ellard & Ruarks had agreed among themselves that they did not want any stock in the creamery. The objection is that the agreement was a private one between the partners of this firm, and could not bind the plaintiff. The evidence was admissible as showing that the firm name was not authorized on the alleged contract, and that the firm would not be bound by the signature of the firm to a contract made by one member of the firm not authorized to sign the firm name to a matter not legitimately connected with the partnership. It did

not appear that the firm had authorized or ratified the signing of the firm name to the alleged contract. On the contrary, the testimony tended to show that it was not authorized. See Civil Code, § 3182.

6. The following evidence, offered by the plaintiff, was withheld from the jury: "A postal card acknowledged by J. P. McRae to have been written by him, postmarked Greshamville, Greene County, Georgia, and addressed to D. W. Broadwater, Greensboro, Ga., as follows, to wit: 10/26/08. Mr. Broadwater, Dear Sir: My wife will take one share in your co-operative creamery, and pay you in four quarterly notes of $25.00. I will stand by her and help her through. If this suits, you can put down one share Mrs. J. P. McRae. If this doesn't suit all right, if it does suit let me know. Very Res., J. P. McRae." It is insisted that this postal card should have been admitted in evidence to show why the name of Mrs. McRae appeared on the contract as a subscriber. The court properly excluded this testimony. The husband would have no authority to sign his wife's name to the contract or authorize any one else to do so, in the absence of express authority given by the wife. In this State a wife is a feme sole as to her separate estate, and no one can bind her or her property without her authority. See Civil Code, §§ 3007, 3011.

7. Error is assigned on the refusal of the court to allow the plaintiff's attorneys to put in evidence a copy of a notice, and to testify in connection therewith that the same was a copy of a notice sent to each defendant, showing that the attorneys held the claim of the contract sued on against them for collection, and that none of the defendants except S. W. Tappan and J. L. Harris came to see the attorneys, or made any response to the notice, until a year afterwards. It is insisted that the evidence was admissible as tending to show that by their silence the defendants admitted the claim held against them, and to rebut the plea of non est factum made a year later. This evidence was not admissible for this purpose. The court did not err, therefore, in refusing to allow the attorneys for the plaintiff to put in evidence a copy of the notice, etc.

8. The following certificate and receipt was admitted in evidence, and later in the trial was ruled out, to wit: "State of Georgia, 30th day of December. To The Chicago Building and

Manufacturing Co., Chicago, Ill.   Gentlemen:—We, the under-
signed executive committee, in behalf of and for the first party to
the contract for the Butter Factory at Greensboro, County of
Greene, State of Georgia, do hereby certify that in company with
your special agents, Mr. W. B. Wort, have examined in detail the
said Butter Factory and have checked off the specifications and
find nothing lacking to complete the same according to said con-
tract and specifications aforesaid; and we have this day received
the keys to the said Factory. .Jas. L. Brown, Chairman, J. R.
Spinks, B. P. Kimbrough, T. A. Branch, J. A. Cathey." On the
back of said certificate the following is written in ink: "Accept-
ance made with understanding and agreement that a pasteurizer
is to be furnished by the Chicago Building and Manufacturing
Co., at once. Said pasteurizer to be returned to said Chicago Bldg.
& Mfg. Co., should the time ever come when it is not used by the
Creamery." It is insisted that the receipt was material as show-
ing that plaintiff had done what it undertook to do under the
contract, and that the plaintiff had the right to have the written
agreement of the acceptance. We think the receipt was properly
excluded from the jury, as it nowhere connects the defendants
with the acceptance, nor was it shown that the committee which
signed the receipt was one appointed and acting under authority
of the contract.

9.   Complaint is made of the following charge of the court:
"Where you find there is a conflict in the evidence, the law requires
you to reconcile that conflict without imputing wilful perjury."
It is contended that the use of the word "requires" is erroneous,
and is too strong a word to use in that connection. We think that
the law does require the jury to reconcile the conflict in the evi-
dence without imputing perjury to any witness; but as the court
further charged the jury in this immediate connection, "If, how-
ever, you find a conflict in the evidence, and are unable to reconcile
it, the law requires that you take the entire testimony, search it
carefully for the truth, and where you find that truth to be, let
that establish and control your verdict," taking the whole charge
on this question, the court did not err in giving the instruction
complained of.

10.   There is no merit in the other assignments of error.

*Judgment affirmed in part and reversed in part.   All the Justices
concur.*