## STATE OF NORTH DAKOTA v. F. A. NELSON.

(163 N. W. 278.)

**Compiled Laws — statutes — act charged — applicable to.**

1. Section 10250 of the Compiled Laws of 1913 is only applicable where no other punishment.is provided in the statutes for the act complained of.

**Information — criminal offense — charging — sodomy — exposing private parts — injury to.**

2. An information which charges that the defendant "did then and there wilfully and wrongfully expose her, the said M's, private parts and lap and suck the same with his tongue and mouth to the gross injury of the said M, and to the gross injury of the public morals of said county," involves the crime of sodomy.

**Sodomy — crime of — statutory definition — common law — carnal knowledge — by mouth — included.**

3. The crime of sodomy, as defined by § 9615 of the Compiled Laws of 1913, is much broader than the common-law offense, and includes carnal knowledge by or with the mouth.

Opinion filed May 8, 1917.

Prosecution under § 10250, Comp. Laws 1913, for grossly injuring the person of another in a manner injurious to the public morals.

Appeal from the District Court of Traill County, *Charles A. Pollock,* J.

Judgment for the plaintiff.    Defendant appeals.

Reversed.

*Purcell & Divet* and *P. J. Swenson,* for appellant.

The facts as proved do not make out the crime charged.    There is no proof of any wrongful public act.    There is not a thing to show that public morals have been disturbed or outraged, nor is there any proof

Note.—On whether sodomy may be committed by penetration of mouth, see notes in 27 L.R.A.(N.S.) 478, and 45 L.R.A.(N.S.) 473.

of physical injury to the person mentioned. The act was in private if done at all. Comp. Laws 1913, § 10250; State v. Stevens, 33 N. D. 540, 157 N. W. 668.

The acts contemplated by this statute must be done openly—publicly —exposed to view, not in private or secretly. 29 Cyc. 1494; Com. v. Catlin, 1 Mass. 8.

It is the mutual disposition of the parties to a crime involving joint guilt that is material. State v. Butts, 107 Iowa, 653, 78 N. W. 687.

When the defendant in a criminal case goes upon the witness stand he subjects himself to a full cross-examination not only as to all relevant matters of the case, but as to collateral inquiries as affect his credibility, even though such matters involve a showing of the commission of other crimes. The defendant's right to protection, however, lies in the discretion of the trial, a sound judicial discretion that evinces fair judgment and real conviction in the selection of one of two alternative courses. Such discretion is subject to abuse. State v. Kent (State v. Pancoast) 5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1052; State v. Nyhus, 19 N. D. 326, 27 L.R.A.(N.S.) 487, 124 N. W. 71; Jones, Ev. § 834 (842), and cases cited, note 31; 3 Enc. Ev. 909.

*Karl Hjort,* State's Attorney, and *Wm. Langer,* Attorney General, for respondent.

"All the provisions of our Code are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." Such is the rule of interpretation in this state. Comp. Laws 1913, § 9201.

"A crime is any wrong which the government deems injurious to the public at large and punishes through a judicial proceeding in its own name." 1 Bishop, Crim. Law, § 32.

As the public suffers with its individual members, so does every individual member suffer with the public. Bishop, Crim. Law, p. 235.

Every person while in this state is subject to its jurisdiction and entitled to its protection. Comp. Laws 1913, § 15.

The essential element of the crime charged consists in the outrage to the person and feelings of the female. The rule admitting proof of extraneous crimes is subject to certain qualifications and exceptions. All relevant facts may be shown, even though they tend to prove other similar offenses. Butt v. State, 81 Ark. 173, 118 Am. St. Rep. 42,

98 S. W. 723; Farris v. People, 129 Ill. 521, 4 L.R.A. 582, 16 Am. St. Rep. 283, 21 N. E. 821; People v. Jennings, 252 Ill. 534, 43 L.R.A. (N.S.) 1206, 96 N. E. 1077; State v. Vance, 119 Iowa, 685, 94 N. W. 204; Thompson v. United States, 75 C. C. A. 172, 144 Fed. 14, 7 Ann. Cas. 62; People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L.R.A. 330, note; Dawson v. State, 32 Tex. Crim. Rep. 535, 40 Am. St. Rep. 791, 25 S. W. 21; People v. Bercovitz, 163 Cal. 636, 43 L.R.A. (N.S.) 667, 126 Pac. 479; Sykes v. State, 105 Am. St. Rep. 983, note; State v. Lapage, 72 N. H. 245, 24 Am. Rep. 69, 2 Am. Crim. Rep. 506; Lipham v. State, 125 Ga. 52, 114 Am. St. Rep. 181, 53 S. E. 817, 5 Ann. Cas. 66.

Testimony which tends to prove a distinct and different offense from that for which defendant is on trial is not admissible. But proof of like offenses, within a reasonable time, is admissible. State v. Place, 5 Wash. 773, 32 Pac. 736; Rogers v. State, 40 Tex. Crim. Rep. 355, 50 S. W. 338; People v. Patterson, 102 Cal. 239, 36 Pac. 436.

Evidence of a prior act is not competent as substantive testimony, but it may be considered, if believed, as corroborative evidence of a subsequent like offense when the latter offense is in issue. People v. Noelke, 94 N. Y. 137, 46 Am. Rep. 128; People v. Casey, 72 N. Y. 393; State v. Dukes, 119 N. C. 782, 25 S. E. 786; People v. Jenness, 5 Mich. 305; People v. Grauer, 12 App. Div. 464, 42 N. Y. Supp. 721; State v. Peres, 27 Mont. 358, 71 Pac. 162; State v. De Hart, 109 La. 570, 33 So. 605; Williams v. State, 8 Humph. 585; Taylor v. State, 22 Tex. App. 529, 58 Am. Rep. 656, 3 S. W. 753; People v. Irving, 95 N. Y. 541; People v. Hooghkerk, 96 N. Y. 149; People v. Eckert, 2 N. Y. Crim. Rep. 470.

Defendant here claimed no privilege. Jones, Ev. § 842, and cases cited; State v. Kent (State v. Pancoast) 5 N. D. 552, 35 L.R.A. 518, 67 N. W. 1052; Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003; State v. Fallon, 2 N. D. 510, 52 N. W. 318; State v. Rozum, 8 N. D. 549, 80 N. W. 477; State v. Ekanger, 8 N. D. 559, 80 N. W. 482.

The latitude to be allowed on cross-examination is largely discretionary with the trial court. Schwoebel v. Fugina, 14 N. D. 375, 104 N. W. 848; Mathews v. Hanson, 19 N. D. 692, 124 N. W. 1116; State v. Madison, 23 S. D. 584, 122 N. W. 647; S. J. Vidger Co. v.

Great Northern R. Co. 15 N. D. 501, 107 N. W. 1083; State v. Staber, 20 N. D. 545, 129 N. W. 104.

BRUCE, Ch. J.   This is an appeal from a judgment rendered against the defendant in a criminal prosecution which is brought under the provisions of § 10,250 of the Compiled Laws of 1913.   The information was as follows: "That heretofore, to wit, on or about the 15th day of July in the year of our Lord one thousand nine hundred and fifteen at the county of Traill, in said state of North Dakota, one F. A. Nelson, late of said county of Traill and state aforesaid, did commit the crime of wilfully and wrongfully committing an act which grossly injured the person of another and which was injurious to public morals, committed as follows; to wit:

"That at said time and place the said F. A. Nelson, being then and there a male person of mature years, did wilfully and unlawfully entice unto himself one Grace Irene Stipp, a female child of tender years, and after having thus secured her unto himself, did then and there wilfully and wrongfully expose her, the said Grace Irene Stipp's, private parts and lap and suck the same with his tongue and mouth, to the gross injury of the child, who was then and there too young and inexperienced to consent to such act or to understand the nature thereof, and to the gross injury of the public morals of said county.

"This contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of North Dakota."

The statute under which the action was brought reads as follows: "Section 10,250.   Every person who wilfully and wrongfully commits any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages public decency, and is injurious to public morals, although no punishment is expressly prescribed therefor by this Code, is guilty of a misdemeanor."

A demurrer was filed to the complaint and was overruled.   In our opinion it should have been sustained.   If guilty at all, the defendant was guilty of the crime of sodomy as defined by § 9615 of the Compiled Laws of 1913.   Section 10,250 (under which the prosecution was brought) is, by its terms, only applicable where "no other punishment

is prescribed." Section 9615 is extremely broad in its terms. While the common-law offense of sodomy involved the direct use of the genital organs of the male, § 9615 includes *carnal knowledge* of "any male or female person by the anus *or by or with the mouth.*" We do not desire to discuss the revolting details of an act such as that complained of. We are satisfied, however, that it involves an attempt to carnally know with the mouth. See Psychopathia Sexualis by Krafft-Ebing.

The judgment of the District Court is reversed and the cause is remanded.

Robinson, J. (concurring specially). This case presents a put-up job to squeeze some loot from a thrifty miser. It is another case of killing the hen that laid the golden egg, and the result is the same.

We have a court drama in four acts. As the story goes, at 3 o'clock one Sunday in July a young lassie, nearing her teens, went into the store of a miser, gave him five cents for candy, went into the back room where she saw some apples, and he went there too, set her standing on an old rickety chair, knelt down and commenced licking her person. They spoke not a word during the ten minutes she was in the store. There was no kissing or caressing. She was not given even a peanut. She went out and ate her candy, then called on a playmate and told her story in four words, and, when night came, told her mother, a widow who did work for the wife of the miser. In this drama the lassie is the hero, the miser is the villain, the mamma is the widow in the background. The playmate and the mamma say she told the same story to them. The miser swears the story is wholly untrue; that it is a complete fabrication; that in July on Sunday afternoons his store was crowded with customers; that there were no apples in July. Of course he was found guilty, and his sentence was nine months and $500. He pays probably a thousand dollars for defense, rather than to pay a few hundred dollars where it would have done the most good.

In such a case the desire of the jurors to be on the laughing side, and to show a mock horror of things scandalous and incredible, has led to the conviction and ruin of many an innocent person. There is no natural desire in man or in any of the lower animals to do any such licking. The conviction was on the mere word of the girl, against the oath of the defendant. I say it was on her word, because she was too

young to know the nature of an oath or to incur any penalty for false swearing, and she was probably well enough pleased to be made the hero in a theatrical court performance, with the state's attorney and the judge in turn leading her, prompting her and putting words in her mouth and addressing her with the greatest familiarity.

On such evidence no jury would have thought of convicting a man of an ordinary theft, but because the charge was incredible, ridiculous, and scandalous, the defendant was convicted and sentenced to nine months in jail and a fine of $500. The girl confessed that she was told what to say, and she said it under manifest pressure and reluctance.

The cross-examination of defendant was highly improper, and it merits a severe rebuke. After defendant had been sworn and denied the charge in the most positive and circumstantial manner, the state's attorney asked him: Did you not do the same thing with this one and that one and several others? He asked some fourteen accusing questions for the manifest purpose of poisoning the mind of the jury, and by each accusing question the state's attorney did in effect affirm that it was true. It is high time for this court to make it known that such a procedure will not be tolerated and that it is cause for disbarment. In the conduct of a case, no attorney has a right to make himself a witness by putting accusing or vexatious questions. Under such a procedure a man's innocence is no protection. The veriest saint may be subject to blackmail by any party or parties who can safely use a little girl as the hero or scapegoat. Indeed, if the accused had been as pure as the angels above, it would have been better for him to have paid $1,000, than to have taken the chance of such an ordeal and the expense of such a trial.

The prosecution is under this statute: Section 10,250: "Every person who wilfully and wrongfully commits any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages public decency, and is injurious to public morals, . . . is guilty of a misdemeanor."

The complaint is for an act which grossly injures the person of another, and not an act injurious to property or public peace, or public health, or public decency, or anything public. There is no averment or claim that the act in question was public. It is needless to review the manifest errors appearing of record. In a prosecution for an act which

is grossly injurious to the person of another, the information and the evidence must state facts showing some material physical injury to the person, and not merely a mental or moral injury, such as may result from vile or abusive language. The statute plainly refers to a wilful act which does a great injury to the physical person of another. Neither in the complaint nor in the evidence is there any statement of facts showing a gross injury or any injury to the physical person of another.

The other judges conclude their decision by a *dictum* holding that, if there were any offense, it was an attempt to commit sodomy. Truly that is ridiculous. Men do not accomplish rape or sodomy with the tongue. It has no penetrating force, and, under the statute, there must be "sexual penetration." The tongue is never an instrument of force or violence.