32355. BARTON *v.* THE STATE.

DECIDED JUNE ·1, 1949.

*Stevens & Stevens,* for plaintiff in error.
*George Hains, Solicitor-General, Randall Evans Jr.,* contra.

MacINTYRE, P. J. Stewart Barton was indicted in the Superior Court of Columbia County for sodomy. He was tried, found guilty, and sentenced to life imprisonment. The defendant's motion to quash the indictment "in the nature of a general demurrer" was overruled and he filed exceptions pendente lite.

His motion for a new trial as amended, containing the general and two special grounds, was overruled and he excepted.

■ Omitting the formal part, the indictment was in the following language: "For that said accused . . did then and there have carnal knowledge and connection, against the order of nature, and in an unlawful manner, with one Edgar Luckey," etc. The material portions of the motion to quash was in the following language: "The indictment does not set forth any offense against this defendant, for the reason that it is not alleged in what way and manner carnal knowledge was had, and for that reason. . . we move to quash the indictment. How and in what manner it was against the order of nature, and we say . . we will have to have other information for us to represent the defendant in the way and manner in which it was done. . . There would be more than one way and manner in which this offense might be committed, and we are entitled to know the way and manner the State alleges it was committed."

"Every indictment . . shall be deemed sufficiently technical and correct, which states the offense in the terms and language of this Code, or so plainly that the nature of the offense charged may easily be understood by the jury." Code, § 27-701. Section 26-5901 defines sodomy in these terms: "Sodomy is the carnal knowledge and connection against the order of nature, by man with man, or in the same unnatural manner with woman." We should have been inclined, without question, to think that the indictment, being in the terms of the Code, was sufficient but for the decision in *Herring* v. *State*, 119 *Ga.* 709 (46 S. E. 876), which has been reaffirmed, followed, or approved in the following cases: *White* v. *State*, 136 *Ga.* 158 (71 S. E. 135); *White* v. *State*, 9 *Ga. App.* 307 (71 S. E. 499); *Jones* v. *State*, 17 *Ga. App.* 825 (88 S. E. 712); *Comer* v. *State*, 21 *Ga. App.* 306 (94 S. E. 314); *Wharton* v. *State*, 58 *Ga. App.* 439 (198 S. E. 823); *McMichen* v. *State*, 62 *Ga. App.* 50 (7 S. E. 2d, 749); *Perryman* v. *State*, 63 *Ga. App.* 819 (12 S. E. 2d, 388); *Knighton* v. *State*, 72 *Ga. App.* 43 (32 S. E. 2d, 861). The *Herring* case, supra, holds that the crime of sodomy may be committed otherwise than *per anum*. At common law the crime of sodomy could be committed *only per anum* by man with man or by man with woman. If the common law were still of force in this State, the indictment in the instant case would have

been so plain (by its terms capable of meaning only one act, carnal knowledge, and connection against the order of nature, namely, per anum) as to have been clearly understood by the jury as required by Code § 27-701. The indictment in fact essentially follows the common-law form of the indictment, as set out by Cobb in his Georgia Penal Code, 1850, p. 89, which, so far as we are aware, is the only model given in any of the Georgia books, texts, reports, or statutes for an indictment for sodomy. Under the status of the law as it has apparently existed since the decision in the *Herring* case, supra, the crime of sodomy may be committed in a variety of ways, including "all unnatural carnal copulations." If under our statute, sodomy includes "all unnatural carnal copulations," we are faced with an apparent conflict between the *Herring* case, a decision rendered by five justices, Simmons, C. J., being absent, and the decision in *Thompson* v. *Aldredge*, 187 *Ga.* 467 (200 S. E. 799), wherein an unnatural copulation between two women was held to be not sodomy, a decision by the full court. If the decision in the *Herring* case is the correct one, then sodomy may be committed in more than one way and the indictment would not be sufficient to withstand a proper demurrer in the nature of a motion to quash, for, under the repeated rulings of both the Supreme Court and this court, Code § 27-701, providing that indictments in the terms of the Code are sufficient, was not intended to dispense with good pleading or to deny to one accused of an offense, which may be committed in more than one way, a statement of the facts relied upon to establish his guilt, sufficiently full and complete to put him upon reasonable notice of what he is called upon to meet. *Locke* v. *State*, 3 *Ga.* 534; *Johnson* v. *State*, 90 *Ga.* 441, 444 (16 S. E. 92); *Langston* v. *State*, 109 *Ga.* 153, 154 (35 S. E. 166); *Kerr* v. *State*, 185 *Ga.* 499 (195 S. E. 436); *Isom* v. *State*, 71 *Ga. App.* 803 (32 S. E. 2d, 437); *Roberts* v. *State*, 54 *Ga. App.* 704 (188 S. E. 844).

Since the decision in the *Herring* case is binding upon us on the principle enunciated there, we have no recourse but to bow to its authority, and, consequently, to determine whether the indictment should have been quashed on demurrer. However, since the court in the *Thompson* case refused to take a view of the crime as including "all unnatural copulations," even where

the practice involved the odious and unnatural copulation *per linguam in vagina* between two women, we shall examine rather more closely than we would have otherwise done the necessary elements of the crime. It can hardly be necessary for us to say that the subject is distasteful. The question involved, however, is one of law and cannot be brushed aside or lightly disposed of. An adequate consideration of it seems to require a somewhat full discussion, and we shall endeavor to meet this requirement without unnecessary indelicacy of expression, but also without prudery or idle denunciation of the crime. This character of conduct is, of course, a vice of depraved natures and instances of its coming before the courts of this State are fortunately rare. Courts are not, however, called upon to expound upon the esthetics or lack of esthetics of a crime in determining the law involved, and however much they may look upon the crime with disgust, their abhorrence of the crime is not to be allowed to blind them to a correct application of the principles of law involved.

The first mention of the crime of sodomy in our statutes, as far as we are aware, appears in the Penal Code of 1816, § 61, which, while it does not define the crime, provides that its punishment shall be by life imprisonment. The Penal Code of 1816 was never made operative, but the section just mentioned was reiterated in the Penal Code of 1817, § 61 (See Prince's Digest of Georgia Laws, 1820, p. 350, § 61). We are aware of no English statute which enumerates the elements of or defines the crime, unless it be true, as Justice Fortescue says in the case of The King *v.* Wiseman, 92 Eng. Rep. (Full Reprint), 774, the definition is given in a statute of the Edgar (ca. 959 A. D.). We are, of course, aware of and familiar with the statutes which, while not defining the crime beyond denominating it the "crime against nature, among Christians not to be named," prescribe its punishment as death (25 Henry 8, c. 6, repealed by 1 Mary 1); 5 Elizabeth c. 17 (which revived and made perpetual 25 Henry 8, c. 6). The statute of 24 & 25 Victoria c. 100, § 61, reduced the penalty to life imprisonment (as the Georgia statute had done some forty-five years before) or for a term of not less than ten years. Since there are no copies of the statutes of Edgar extant in the State Library or otherwise available to use, we must seek elsewhere a definition of the crime.

The crime derives its name from the City of Sodom where it seems that the sexual perversion was prevalent (Genesis 19:1-35), and that the crime interdicted was perpetrated in one way, per anum, for in the Mosaic law it was written, "thou shalt not lie with mankind as with womankind (Leviticus 18:22; 20:13; Deuteronomy 23:17, and see I Kings 14:24; Romans 1:27, and Corinthians 6:9). The Greeks denominated the crime pederasty, connoting coition per anum, or literally, love of boys, though the frequent use of the word *pais*, meaning either boy or girl, would seem to indicate that the crime was likewise committed upon girls. The Romans forbade the crime spoken of as *venus postica* (see Petronius' *Satyricon*) (hence the archaic English word, "venery," meaning sexual excesses), which strongly hints that the crime prohibited was perpetrated *per anum*, if indeed, it does not mean exactly that! Lord Coke in his Institutes gives this definition: buggery or sodomy. "Buggery is a detestable and abominable sin, amongst Christians not to be named, committed by carnal knowledge against the ordinance of the creator, and order of nature, by mankind with mankind, or with brute beast, or by womankind with brute beast." 2 Coke's Institutes (Ed. 1797), Part III, p. 58.

Hawkins in his pleas of the Crown, p. 357, states: "All unnatural copulations, whether with man or beast, seem to come under the notion of sodomy . . . ," citing 12 Coke 26, 37 (77 Eng. Rep., Full Reprint, 1318), and 3 Inst. 58. Even the most casual examination of Hawkins' citations reveals that in making the statement Hawkins was using sodomy as a generic term and meant that what was otherwise known at common law as buggery and bestiality came within the definition of sodomy, the terms being synonymous at that time. We do not think that he meant that in sodomy proper any species of copulation between man and man or man and woman, other than *per anum*, was to be defined sodomy. In Wharton's Criminal Law, Vol. I (12th ed., 1932), 1034, § 754, we find this statement, similar in import to what we have just said: "Sodomy is the 'crime against nature,' or the 'infamous crime against nature,' these phrases being synonymous with the word 'sodomy' in all its various branches or designations, and is a generic term which embraces (1) sodomy proper, (2) buggery, and (3) bestiality."

It seems that the text writers are agreed that sodomy at common law was committed *per anum* and not otherwise. 2 Russell, Crimes, p. 698; 2 Bishop New Crim. Law, § 1193; 25 Am. & Eng. Enc. Law (2nd ed.), p. 1145; McClain, Crim. Law, § 1153; Wharton, Crim. Law 579; Wharton, Crim. Law (12th ed.), pp. 1034-1047; 3 Burdick, Law of Crime, §§ 876-880; Rex *v.* Jacobs, 168 Eng. Rep. (Full Reprint) 830.

In the United States where the common-law crime of sodomy has been prohibited or the statute enacted contemplated the common-law crime, the courts have uniformly, with one or two exceptions, refused to take unto themselves the legislative function of expanding the definition, leaving that function to repose within the proper power of the legislatures, where we assume it belongs. See Commonwealth *v.* Poindexter, 133 Ky. 720 (118 S. W. 943); Prindle *v.* State, 31 Tex. Crim. 551 (37 Am. St. R. 833, 21 S. W. 360); Mitchell *v.* State, 49 Tex. Crim. 535 (95 S. W. 500); Harvey *v.* State, 55 Tex. Crim. 199 (115 S. W. 1193); Lewis *v.* State, 36 Tex. Crim. 37 (61 Am. St. R. 831, 35 S. W. 372); Davis *v.* Brown, 27 Ohio St. 326 (following this decision the definition was expanded by statute); Ausman *v.* Veal, 10 Ind. 355 (71 Am. D. 331); Estes *v.* Carter, 10 Iowa 400 (following this decision the definition was expanded by statute); Kinnan *v.* State, 86 Neb. 234 (125 N. W. 594); People *v.* Boyle, 116 Cal. 658 (48 Pac. 800); People *v.* Schmitt, 275 Mich. 575 (267 N. W. 741, 742); State *v.* Johnson, 44 Utah 18 (137 Pac. 632); Wise *v.* Commonwealth, 135 Va. 757 (115 S. E. 508).

In those States where it might appear that the courts of their own motion expanded the definition, it will be found, upon an examination of the cases, that it was not the court which changed the common-law definition, but the change in the definition of sodomy was made by the statutes. See Honselman *v.* People, 168 Ill. 174 (48 N. E. 304); Glover *v.* State, 179 Ind. 459 (101 N. E. 629); State *v.* Whitmarsh, 26 S. D. 426 (128 N. W. 580); State *v.* Gage, 139 Iowa 401 (116 N. W. 596); State *v.* Vicknair, 52 La. Ann. 1921 (28 So. 273); State *v.* Hubbard (Mo.) 295 S. W. 788; State *v.* Nelson, 36 N. D. 564 (163 N. W. 278); State *v.* Cyr, 135 Me. 513 (198 Atl. 743). The extraordinary, and to the American mind one might say startling, language used

by the Wisconsin court in Means *v.* State, 125 Wis. 650 (104 N. W. 815)—"There is sufficient authority to sustain a conviction in such a case [sodomy *per os*], and if there were none, we would feel no hesitancy in placing an authority on the books"—was entirely unnecessary to an adjudication of that case, for the Wisconsin statute itself defined the crime so as to include the act *per os.*

In East's *Pleas of the Crown* (1803 ed., 1st ed. published in 1716), we find the identical language used in our statutes to define sodomy (Penal Code, 1833, § 36, Ga. L. 1833, p. 152; and all subsequent Codes, including Code § 26-5901): "This offence [sodomy] . . consists in a carnal knowledge committed against the order of nature by man with man, or in the same unnatural manner with woman, or by man or woman in any manner with a beast." The last phrase constitutes the definition given in our Codes for bestiality. It would seem, therefore, that our statute is nothing more or less than a codification of the common law, and in 27 L. R. A. (N. S.) 478, note, we find this comment on our statute, which, while not binding upon us, strengthens us in our view: "It appears that sodomy at common law was defined in the very words of the Georgia statute." "Content is given to many enactments of specific crimes only by resort to common-law definitions" (Common Law Crimes in the United States, 47 Columbia Law Rev. 1332); and "we [must] go to the common law to get the meaning of the words used." *White* v. *State,* 51 *Ga.* 286; and see also Levison *v.* United States, 47 Fed. 2d, 470 (1). "Where the common-law crime has been adopted, and common-law terms used in its definition, the construction previously placed thereon by the English courts becomes by intendment a part of the adopting statute." *Thrower* v. *State,* 117 *Ga.* 753, 757 (45 S. E. 126).

It would seem that the Supreme Court of Georgia in its interpretation of our statute has expanded the common-law definition of sodomy in the *Herring* case and reaffirmed its action in the *White* case, where this court certified the question of whether or not the crime of sodomy may be committed otherwise than *per anum.* It seems to us that under such interpretation the defendant is entitled to have the information as to which one of the ways the State contends that he committed the crime of

sodomy (*Johnson* v. *State*, supra; *Locke* v. *State*, supra); and upon his calling for the information by a special demurrer in writing before pleading to the merits, where such information is not furnished him in the indictment, the indictment should be quashed. However, an oral motion in the nature of a general demurrer would not reach the defect sought to be corrected here. Hence the court did not commit reversible error in overruling the oral motion to quash in the nature of a general demurrer. *Gilmore* v. *State*, 118 *Ga.* 299 (45 S. E. 226); *Newsome* v. *State*, 2 *Ga. App.* 392, 393 (58 S. E. 672); *Langston* v. *State*, 109 *Ga.* 153 (35 S. E. 166); *Walker* v. *State*, 124 *Ga.* 440, 441 (52 S. E. 738); *Taylor* v. *State*, 123 *Ga.* 133 (51 S. E. 326).

■ In special ground 2, error is assigned upon the following excerpt from the charge of the court: "Now, gentlemen of the jury, if you find that there has been a conflict in the testimony, it is your duty to reconcile that conflict so as to impute perjury to no one." The defendant contends that this excerpt is erroneous because there was much conflict in the testimony; that the testimony of Edgar Luckey was false, and that practically all of the testimony of J. E. Harrison was false, and the charge deprived the jury of the right to consider that such evidence was false or any part of it was false, and made it "mandatory" that the jury find that no witness had sworn falsely; whereas there were many material conflicts in the evidence.

Chief Judge Sutton and Judges Felton, Gardner, Parker, and Townsend hold this charge to be erroneous and are of the opinion that the case should be reversed for that reason on the following grounds: The defendant offered no witness. He only made a statement in his own behalf, and as pointed out in one of the briefs of counsel for the defendant, the court fully and correctly charged the jury as to their right to believe the defendant's statement, even in preference to the sworn testimony. There were, however, conflicts on material matters in the testimony of the State's witnesses. The plaintiff in error has the burden of showing that error was committed on the trial. See *Beavers* v. *Mabry*, 195 *Ga.* 169 (23 S. E. 2d, 672). However, when an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record that the error is harmless.

See *Pelham Manufacturing Co.* v. *Powell,* 6 *Ga. App.* 308 (64 S. E. 1116); *Western & A. R. Co.* v. *Sellers,* 15 *Ga. App.* 369 (83 S. E. 445). It is contended by counsel for the State that the charge as a whole corrects the error of which complaint is here made. This certainly was not accomplished by merely charging correctly on the defendant's statement and as to the right of the jury to believe it in preference to the sworn testimony in the case. It is the prerogative of the jury in arriving at a conclusion on the disputed issues of fact to believe certain parts only of the testimony of each witness, and reject other parts of his testimony, and combine these parts only with other parts only of the testimony of other witnesses, and reject other parts of the testimony of each of the other witnesses, but in doing this the jury is not bound to reconcile the conflicts so as to impute perjury to no one, which they were instructed to do in this case. It is their duty only to try to do so, and if they cannot, it then becomes their duty to exercise the prerogative just pointed out above. Instructions merely to the effect that the jury have the right to believe the statement of the defendant in preference to the sworn testimony, coupled with the instructions of the court complained of here as error, left the jury without instructions as to what to do in the event of a conflict in the testimony of the sworn witnesses against the defendant except to so reconcile these conflicts as to impute perjury to no one. The trial judge, therefore, fell far short of the requirements as to this principle of law. Where the judge undertakes to charge the law upon a particular subject, he should charge all the law on that subject that is material and applicable to the case. See *Tucker* v. *Talmadge,* 186 *Ga.* 798 (198 S. E. 726). The cases relied upon by counsel for the State, to the effect that the excerpt from the charge complained of here is not error, all go further than the trial court went in this case by adding that, "if, however, you find a conflict in the evidence and are unable to reconcile it, the law requires you to take the entire testimony, search it carefully for the truth, and where you find that truth to be, let that establish and control your verdict," or additional instructions of a similar nature. See *Chicago Bldg. & Mfg. Co.* v. *Butler,* 139 *Ga.* 816 (78 S. E. 244); *Avakian* v. *State,* 53 *Ga. App.* 278 (1) (185 S. E. 383); *Smith* v. *State,* 179 *Ga.* 791 (177 S. E. 711); *Parker* v.

*State,* 51 *Ga. App.* 295 (180 S. E. 390). As pointed out in *Chicago Bldg. & Mfg. Co.* v. *Butler,* supra, page 824, the law does not require the jury to reconcile a conflict in the evidence without imputing perjury to any witness. The word "requires" as used in the charge complained of there was held not to be too strong, because the court in that charge went further and gave the jury the alternative as their guide upon their failure to so reconcile the testimony. The charge here complained of unequivocally instructed the jury that it was their duty to so reconcile conflicts in the testimony as not to impute perjury to anyone. We think this charge is error, and that the error is harmful. The defendant stands convicted and sentenced to life imprisonment, under the law as it stood at the time of the trial. The General Assembly during the last session reduced the punishment for the crime, so that in cases such as this one the punishment will in the future be confinement in the penitentiary from one to ten years. See Ga. L. 1949, pp. 275, 276. The error in the charge clearly appears and the prejudicial nature of it is not only presumed but is disclosed by the record, and this case being a close one on its facts, we feel that a new trial should be granted.

With this the writer cannot agree. I think that the law does make it the duty of the jury to reconcile conflicts in the evidence so as to impute perjury to no witness. *Chicago Bldg. & Mfg. Co.* v. *Butler,* supra. The jury commissioners are instructed to put in the jury box upright and intelligent men. Code, § 59-106. I think, as ordinarily intelligent and reasonable men, the jurors understood from the charge of the court that, if they could not reconcile the testimony of the witnesses, it was their duty to determine whom and what they would believe. The charge here, in my opinion, is a correct statement of a general rule of law, and if the defendant had desired a more specific and more concrete instruction, he should have so requested. *Tabor* v. *Macon Ry. &c. Co.,* 129 *Ga.* 417 (59 S. E. 225); *Byrd* v. *Grace,* 43 *Ga. App.* 255 (9) (158 S. E. 467). I think that the criticisms made of this charge in this ground show no reason for reversal.

The other questions raised by the special grounds of the motion for a new trial may not arise on another trial of the case, and we deem it unnecessary to consider them. Of course, since the

case is reversed on one of the special grounds, the general grounds of the motion will not be considered.

Pursuant to the act of the General Assembly approved March 8, 1945 (Ga. L. 1945, p. 232), requiring that the whole court consider any case in which one of the judges of a division dissents, this case was considered and decided by the court as a whole.

*Judgment reversed. Sutton, C. J., Felton, Gardner, Parker, and Townsend, JJ., concur. MacIntyre, P. J., dissents from the ruling in division two of the opinion.*